**SEAGER et al. v. STEWART-WARNER SPEEDOMETER CORPORATION.**

(District Court, N. D. Illinois, E. D.    October 8, 1921.    Decree October 17, 1921.)

No. 629.

1. **Patents ⬤⟿226—That patentee does not apply invention to all uses to which it might be applied immaterial.**

That a patentee of a system for feeding the carbureter of internal combustion engines applied his invention commercially only to single-cylinder stationary engines, and not to multi-cylinder engines, did not affect his right to sue for infringement by reason of a device used largely on automobiles.

2. **Patents ⬤⟿328—984,032, claim 5, and 983,994, for feeding system for engines, held infringed, and not anticipated.**

The Seager Patent, No. 984,032, claim 5, for a system for feeding the carbureter of internal combustion engines, consisting in part of an auxiliary reservoir, filled by means of the suction in the intake pipe, and the Harrington patent, No. 983,994, for an improvement, consisting in dividing the auxiliary reservoir into two superimposed chambers, *held* infringed by a device, all of the essential features of which were found in the patented inventions, except that a screenlike partition took the place of a throttle valve, and a float valve mechanism was used to provide automatically intermittence of suction and nonsuction intervals; also *held* not anticipated.

3. **Patents ⬤⟿226—Relief not denied, because plaintiff's device never sold to particular trade, while defendant placed its device on the market at great investment.**

Where there is no doubt as to the validity of patents for a feeding mechanism for internal combustion engines, relief against infringement will not be denied because the patented devices, used on stationary engines, have never been sold to the automobile trade, while the infringing device has been put on the market at an enormous investment; the invention being applicable to automobiles, and the infringing device applicable to stationary engines.

In Equity.    Suit by James B. Seager and others against the Stewart-Warner Speedometer Corporation.    Decree for plaintiffs.

Lynn A. Williams and Clifford C. Bradbury, both of Chicago, Ill., for plaintiffs.

George L. Wilkinson and Charles S. Burton, both of Chicago, Ill., for defendant.

CARPENTER, District Judge.    This cause is concerned with the charge by the plaintiffs that the defendant's Stewart vacuum gasoline system infringes Seager patent, No. 984,032, issued February 14, 1911, and Harrington patent, No. 983,994, issued February 14, 1911.    No question is raised as to the title of the plaintiffs to the patents sued upon.

Seager's patent has to do with a stationary engine, where the mixture was delivered without the interposition of a throttle.    Harrington adapted Seager to use on an engine which in effect had an interposed throttle.    Prior to Seager the nozzle of the carbureter commonly was arranged so as to suck the requisite fuel from a float chamber, where the inflow of gasoline was so controlled that it could

not exceed a predetermined level; the supply of gasoline to the float chamber being had by gravity from a storage tank at a higher level.

The record discloses many objections to the gravity supply system. To overcome this it was common, prior to Seager, to pump fuel by mechanical means from a low-level storage tank of large capacity into a small reservoir open to atmospheric pressure, and maintained at a constant level, either by overflow or float control. From this small reservoir the carbureter nozzle was supplied. The great objection to this arrangement was its high first cost and frequent derangement of the complicated pump and pump-driving mechanism. Its real merit was that it supplied fuel to the nozzle of the carbureter under substantially constant and uniform conditions, whereby the correct mixture could be maintained.

Then came Seager, who shows in his patent an auxiliary reservoir, so located in an elevated position as to supply fuel to the nozzle of the carbureter under substantially constant and uniform conditions, and into which reservoir the fuel is elevated from a low-level storage tank by means of the same unimpaired suction of an internal combustion engine as that which draws the air through the carbureter and the fuel from the carbureter nozzle; this elevation of fuel to the secondary reservoir being effected independently of the carbureter nozzle, so that the supply to the carbureter is unaffected by the location of the main storage tank or the level of the fuel contained in it.

Structurally, Seager's combination is perfectly stated in claim 5, which is here in suit, and which calls for the combination with (1) a carbureter of the suction type, of (2) a reservoir for liquid, (3) a discharge conduit leading from said reservoir to said carbureter, (4) a conduit for supplying liquid to said reservoir, (5) from a source at a lower level, (6) and means for feeding the liquid through said supply conduit by the suction of the suction producing means of the carbureter, comprising a conduit connecting said reservoir with the suction means, for the purpose described.

Seager applied his invention commercially to a single-cylinder four-cycle engine, in which the suction in the manifold is of an intermittent character, such as is necessary to be developed in the auxiliary reservoir, as shown in the Seager patent. The Seager combination, applied without change or addition to a four or a six cylinder automobile engine, in which a throttle is used to vary the speed and power output of the engine, makes it necessary, to effect an intermission of suction and nonsuction periods in the auxiliary reservoir, only to shift from time to time the throttle to one side or another of a critical position.

[1] Defendant contended that Seager's combination could not be used upon an automobile, "because an automobile engine must be controlled by a throttle," but the plaintiff's attorneys, during the course of the trial, applied the Seager combination, without change, to a modern six-cylinder Buick automobile, and demonstrated by some 30 or 40 miles of driving over Chicago streets the maintenance of substantially constant speeds from nothing up to 42 miles an hour. From this demonstration I conclude that Seager's combination will operate in the manner and for the purpose described in his patent, and when-

ever the suction in the auxiliary reservoir is intermittent. The record does not disclose that, prior to the date of his patent, Seager ever thus applied his invention to a multi-cylinder engine. This, however, is of no consequence, because Seager was entitled to cover all of the uses in the art to which his invention might be applied.

Harrington, who collaborated with Seager to make a practical use of Seager's invention in an engine having a restricted or throttle intake, devised an improvement upon Seager, which consisted in dividing the auxiliary reservoir into two superimposed chambers, and placing in the dividing wall a downwardly opening check valve, controlling the communication between the upper and lower chambers. He opened the lower chamber continuously to atmospheric pressure, so that the discharge of fuel into the carbureter would at all times be independent of the suction in the upper chamber. Stewart-Warner Company's defense, as stated by its counsel, is "primarily noninfringement," but that an examination of the prior art "is believed to fully warrant the secondary defense of invalidity."

[2] First, as to noninfringement: The defendant's vacuum system, sometimes called the Webb Jay system, comprises an internal combustion engine whose several cylinders are supplied from a common manifold, to which the carbureter is connected, there being a manually controlled throttle valve at or near the place where the flange of the carbureter is joined to the flange of the intake manifold. There is an auxiliary reservoir having within it a concentric wall dividing the reservoir into upper and lower chambers, and a downwardly opening check valve controlling the communication between the two. There is a discharge conduit leading from the lower compartment to the carbureter, and a conduit for supplying fuel to the upper compartment from a low level main storage tank. There is also a suction conduit connecting the upper compartment with the engine manifold on the engine side of the throttle, whereby the suction of the engine develops a partial vacuum in the upper compartment of the reservoir.

The essential features of defendant's device are found in Seager and Harrington, save that in Harrington the obstruction to the flow of the mixture through the venturi tube is in the form of a screenlike partition, whereas in the defendant's equipment the obstruction takes the form of a throttle valve. The effect of the obstruction, however, in both cases is the same. The defendant also operates a float valve mechanism to accomplish automatically the same result sought by Seager and Harrington, namely, to have the suction producing means of the carbureter develop in the reservoir an intermittence of suction and nonsuction intervals. This is new, so far as the record discloses, and for use with four or six cylinder engines is undoubtedly an improvement. It does not, and cannot, however, change or destroy the combination of Seager and Harrington, either in structure, mode of operation, or result.

Webb Jay, the inventor of defendant's so-called infringing system, realized that, in climbing a steep hill with an automobile, the suction of the engine will be inadequate to develop in the reservoir sufficient suction to elevate fuel from the low-level storage tank. Jay realized

the desired result by enlarging and deepening the lower compartment of his reservoir. This made it possible for the level in that compartment to vary as much as six or seven inches. In order to make this reserve capacity available for supplying the carbureter, it was necessary to locate the entire reservoir at a level above that of the carbureter nozzle.

It was undoubtedly an improvement on anything Seager or Harrington had done for the defendant to enlarge the reserve capacity of the lower compartment of the reservoir, but this enlargement, and the inclusion of a float chamber and valve in the discharge conduit leading to the carbureter nozzle, does not organically change or avoid the construction, mode of operation and result of the Seager and Harrington inventions. The essentials of the Seager combination are retained in defendant's equipment, notwithstanding that there have been added, first, the Harrington improvement of a two compartment reservoir with intervening valve; and, second, the automatic suction intermitting mechanism.

In the defendant's system it is the presence of the Harrington invention which permits the use of an obstruction (a throttle) in the air line to the engine at a point between the carbureter nozzle and the point at which the suction conduit is tapped in, so that the suction of the engine, however high it may go, may still be utilized to develop a correspondingly high suction in the upper compartment of the reservoir for elevating fuel into it, while the lower compartment, which is always under atmospheric pressure, will continue to feed fuel to the carbureter, no matter how relatively low the suction upon the nozzle may become, and this, notwithstanding that in the defendant's system there is added to Harrington the automatic suction intermitting mechanism, and notwithstanding that the substantial constancy of the level of the supply to the carbureter nozzle is effected by the float chamber and valve rather than by the overflow pipe of Harrington.

All of the functions which are ascribed by the defendant to the Stewart-Warner Webb Jay system, over and above Seager and Harrington, are functions resulting solely from additions to, and not departures from, the combinations of Seager's and Harrington's claims. I find, therefore, the defendant's device is an infringement, and unless there be something in the prior art to invalidate or restrict the claims of the Seager and Harrington patents, the plaintiffs must prevail. The record is clear and convincing that by a successful reduction to practice Seager completed his invention in substantially identical conformity with his patent specification in the fall of the year 1905.

The defendant urges 22 prior publications and prior public uses. 14 of which were discussed by its expert witnesses, and 8 of which (Sheldon, Hall, Lentz, Graef, Ronan, Bean, Cahill, and Vaganay) were offered without consideration, except by counsel. The anticipatory and restrictive matter may conveniently be divided into groups, as follows:

Savorgnan, Lentz, Hall, and Sheldon show mine water and corrosive fluid pumps having no suggestion of an internal combustion engine,

or the use of the suction of such an engine for any purpose. Of these, Savorgnan was admittedly the best reference. If Savorgnan fails to meet the emergency, we need go no further.

The purport of the defendant's testimony was to the effect that if one unit of Savorgnan's mine pump were to be connected through one of its pipes to a low-level storage tank of gasoline, and if another of its pipes were to be replaced by two-branch pipes, one extending upwardly to serve the reserve and standpipe function of the lower and outer chamber of the defendant's reservoir, and the other were to discharge into the float chamber of a carbureter, or into a vessel at a lower level than the chamber shown in the Savorgnan patent, and if another of the pipes were to be connected with the manifold of that engine, so that the suction producing means of the carbureter (the suction of the internal combustion engine) would take the place of the separate power driven pump of the Savorgnan system, then one would have substantially the Stewart-Warner Webb Jay device. Savorgnan antedated Seager by nine years.

Regardless of what changes may be made in Savorgnan by an expert in internal combustion engines, either by the addition of a small supplemental reservoir or by submerging the whole pump section in a large outer reservoir, or by substituting two pipes for the single pipe of Savorgnan, neither Savorgnan nor any one in the art prior to Seager seems to have hinted at the possibility of utilizing the suction in the intake pipe of an internal combustion engine as a source of power to fill an auxiliary carbureter supplying reservoir with fuel from a low level storage tank. Savorgnan's broadside of pumps never suggested to the world how to feed gas to an automobile.

In the second group in anticipation may be classified the Tookey book, the Engineering Magazine, Weinman & Euchenhofer patent, 555,717, Graef patent, 622,851, Ronan patent, 752,181, Bean patent, 761,192, Bates British patent, 13,169, of 1899, Stover 1902 catalogue, and the Baker engine, the Hafer-Stover engine, and the Goetz-Stover engines. All of these disclosures are of internal combustion engines, in which the suction upon the nozzle of a carbureter directly elevates fuel a greater or less distance to that nozzle.

Of all the direct to nozzle lifting devices of the prior art, the defendant urges most strenuously the Goetz-Stover; but even as to this the defendant's expert finally conceded that its operation was now "not directly comparable" with Seager. It was demonstrated at the hearing that the two-inch rise of level in the outer pipe of the Goetz mixer had no more effect upon the supply of fuel to the carbureter nozzle than if this nozzle had been connected by a pipe leading directly from the bottom of the main storage tank. I cannot find that the Goetz device, or any of the other direct to nozzle lifting schemes, have the essential characteristics of Seager.

It is not claimed that Goetz, or any of the devices of this group, have any bearing upon the Harrington patent.

Melhuish's British patent, 24,201, of 1903, falls into a third line of defense in which an internal combustion engine mechanically drives a pump, elevating fuel from a low-level storage tank and forces it into

the engine cylinder, there being no carbureter of the suction type, or of any type. Its construction and mode of operation are too remote from anything in Seager and Harrington, and even the defendant's system, to warrant further consideration. It is because Seager and Harrington and the defendant all elevate their fuel into an auxiliary reservoir at a rate in excess of the concurrent engine demand that the proportions of their mixtures are wholly independent of variations of level in the main storage tank.

Grouvelle and Arquembourg, 741,962, and De Dion et Bouton, French patent, No. 328,366, of 1903, fall within a fourth group. At the trial these two patents were the most relied upon of all the prior art. The defendant sought by physical demonstrations and testimony to show that, if the float chambers of these carbureters were connected by a conduit having an upwardly opening check valve with a low-level storage tank, and if the sizes and proportions of certain parts of the carbureters were suitably altered, fuel could be elevated to the float chamber when the carbureter was applied to a single-cylinder hit-or-miss governed stationary engine. In this the defendant succeeded, thus realizing Seager's dream; but no amount of testimony or demonstration can overcome the insurmountable barrier that neither Grouvelle nor De Dion ever disclosed or suggested the availability of any suction developed in their float chambers, due to their connection with the engine intake, for the purpose of lifting fuel from a lower than engine level tank.

Counsel for defendant must have recognized this, because in their last and supplemental brief apparently they have abandoned De Dion and advanced a new theory regarding Grouvelle, which I do not regard as pertinent. In so far as the record shows, no one prior to Seager recognized the usability of the suction produced in the intake passageway of an internal combustion engine as a source of power. Certainly, no one prior to Seager in any way applied that power to lifting fuel from a low-level tank to an elevated auxiliary reservoir, from which the carbureter might be supplied independently of the level of the fuel in the main storage tank.

Seager may have failed to claim the broader concept of applying that suction power to every kind of work outside the intake passageway; but certainly the means claimed by him for raising the fuel to an elevated auxiliary reservoir, and then discharging it to the carbureter of the engine, was new and entitled to broad protection.

Binns' British patent, 15,467, of 1906, Vaganay's French patent, 365,739, of 1906, and Cahill's patent, 878,770, may be grouped together, because they are all of a date too late to be effective against Seager.

Vaganay is urged against Harrington, but Harrington's invention was not of the broad character of Seager's. Harrington easily is distinguished from Vaganay. It would require considerable imagination to believe that Vaganay would be operative in the manner described in the patent without essential reorganization, for the reason that, while with a single-cylinder engine the nonsuction intervals are three times as long as the suction periods, the force acting to cause a back

flow through the valveless orifices between the horizontally located vessels is many times greater than the force acting to cause a flow in the desired direction during nonsuction intervals.

[3] I have been urged to resolve any doubts in favor of the defendant, because the plaintiffs' device has never been sold to the automobile trade, and because of the enormous investment made by defendant in putting its device on the market. This plea would be important, if I were in doubt as to the validity of Seager and Harrington. However disturbing defendant's plea in this behalf has been, I must still bear in mind that whatever the power and activity of the defendant may have been in the past, it has been shown, not only that Seager's invention is applicable to automobiles, but also that the defendant's device is applicable to stationary engines.

As early as 1914 Seager was brought to the attention of the defendant, when the Patent Office cited Seager in anticipation of claims made in the then pending application of Webb Jay. The Seager interests then opened negotiations with the defendant, which proved to be fruitless. At that time the defendant resolved all doubts in its favor. In that it was wrong. I find the plaintiffs' patents both valid and infringed, and a decree may be prepared accordingly.