PACKAGE MACHINERY CO. v. JOHNSON AUTOMATIC SEALER CO.

(Circuit Court of Appeals, Sixth Circuit. November 15, 1917.)

No. 2987.

1. PATENTS ⊚⇒328—VALIDITY AND INFRINGEMENT—PACKAGE-SEALING MA-
CHINE.
The Ferguson patent, No. 1,066,193, claims 1, 2, 3, 9, and 10, for a pack-
age-sealing machine, for use in connection with a wrapping machine, in
view of the prior art, and of disclosures made to the patentee, by the
customer for whom the first machine was built, held void for lack of
patentable invention. Claim 7 also held not infringed, conceding its
validity.

2. PATENTS ⊚⇒35—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.
Favorable public reception of a patented device is not important, where
lack of invention is plain.

Appeal from the District Court of the United States for the Eastern
District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Package Machinery Company against the John-
son Automatic Sealer Company. Decree for defendant, and complain-
ant appeals. Affirmed.

Archibald Cox and Robert W. Byerly, both of New York City, for
appellant.

F. L. Chappell and Otis A. Earl, both of Kalamazoo, Mich., and
R. H. Parkinson, of Chicago, Ill., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL,
District Judge.

KNAPPEN, Circuit Judge. Suit by appellant for infringement of
United States patent No. 1,066,193, to Ferguson, applied for Feb-
ruary 5, 1909, issued July 1, 1913. The patent relates to a machine
for sealing the flaps and overlapping ends of a package-wrapper im-
pregnated with paraffine or other readily fusible substance. The oper-
ation consists in melting the wax at the overlapping parts by heating,
and causing them to adhere through pressure. The defense assails
the validity of the claims in suit, as well as Ferguson's inventorship.

[1] The alleged invention grew out of the construction by Thomas
F. Condon & Co., of New York, of a package-wrapping and sealing
machine for one of the Chicago factories of the National Candy Com-
pany. Both Plate, who was the Candy Company's factory manager,
and Ferguson, who was Condon & Co.'s mechanical engineer, applied
for a patent. Upon an interference, there was concession of priority
in Ferguson, under an arrangement between the parties by which the
Candy Company was given a shop right to use the machines in the
factory in question. The patent had previously been assigned to Con-
don & Co., and was later assigned to appellant.

When hearing was first had below, the correspondence relating
to the order for the construction of the machine was not to be found.
In its absence, the District Court credited Ferguson's claim to inven-
torship as against Plate, found invention, and directed entry of inter-

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

locutory decree in plaintiff's favor. Before the decree was entered the correspondence was found in the office of the attorneys who had represented Ferguson in the interference proceeding, and by motion and stipulation the case was reopened for the admission of the correspondence and certain other testimony. Upon a reconsideration of the case decree was entered finding the claims in suit void for the reason that "the patentee did not conceive the idea embodied in the improvement."

The argument here has covered a wide range, embracing not only the subject of inventorship, as between Plate and Ferguson, but also questions of anticipation and invention. Reference to the prior state of the art and to the circumstances attending the ordering and construction of the machine should be helpful.

The Candy Company had been putting out rectangular packages of popcorn wrapped in paraffine paper. The wrapping was done by hand; the sealing also by hand—by rubbing first the upper side and then the ends, one by one, upon the upper surface of a steam chamber laid flush with the surface of the table at which the wrapping was done. A temperature of 135 to 140 degrees was enough to fuse the wax. The air of the room cooled and hardened it.

Condon & Co. had been putting out an automatic wrapping machine —a complicated, but successful, mechanism. Plate learned of the machine through its use by certain leading soap manufacturers, and it occurred to him that it would be an easy matter to have the wrapping machine also seal the packages. He accordingly wrote Condon & Co. that the Candy Company (in whose name he wrote) was "looking for a machine which will wrap the inner package in paraffined paper, and, after wrapping the same, continue the operation under and between surfaces heated by means of steam, in order that the paraffine may melt, and the package, being continued under gentle pressure through a covered chute, will come out at the end hermetically sealed, through the paraffine being melted during the period that it took to pass between the heated plates." The writer inclosed one of the Candy Company's packages, which the letter stated illustrated "just what we want to do and what we are now doing by hand"; called attention to the fact that "one side and both ends are sealed," that contact with heat was necessary on but one side and the two ends, and that Condon & Co. would thus doubtless understand "just what we mean when we say that this package, after being wrapped, is to pass under and between hot plates." Then followed this statement:

"As, no doubt, the cakes of soap, or packages, or whatever your machine is wrapping, pass into a trough, or on a belt, it would be a very easy matter to have this belt, or trough, convey the wrapped package in question to, between, and through such heated plates, and then, by a continuation of this trough, the sides of which would firmly hold the ends of the package and the top, by the trough being covered with either metal or wood, would only require a very gentle pressure to hold the paper firmly together until the paraffine has an opportunity to set."

A visit by Ferguson to the candy factory was had, to enable him, as stated in Condon & Co.'s letter, "to get some additional information in reference to the wrapping of your packages that will help him to

decide whether an attachment to our wrapping machine for sealing the package can be perfected." There, for the first time, Ferguson saw paraffine wrappers placed around cartons; Plate's letter had given him the first information of their use. He had, however, seen carton-sealing machines for pasting packages, with passages and conveyors to carry off the cartons. He had himself employed an endless belt running in a channel for delivering the wrapped soap from the machine; the sidebars, and the bars supporting the belt, being of wood. Indeed, a walled passageway or chute for such delivery was at that time common everyday experience in wrapping machines. When Ferguson saw how Plate was sealing the sides and ends of the paraffined package, it was perfectly clear to him that the same work could be accomplished by heating the surfaces of the channels. There was built a standard wrapping machine, with an attachment at its discharge end consisting of a table composed of four angle irons, a chain conveyor with flights, for carrying the wrapped packages under and between steam boxes, intended to be attached to the sides of the table; the cooling of the top sealing being effected by a cold plate which held the top flap in position, that of the ends by contact with the angle bars. It differed from the ordinary soap conveyor only in using a chain with flights for carrying the package, instead of a belt; in having metal side rails the full height of the channel (instead of wooden sidebars), together with provision for the attachment of heaters and the top cooling plate. As furnished to the Candy Company it lacked the steam boxes and the pipes therefor, which were to be, and were, supplied by the Candy Company, and for which no patterns were furnished— their location being indicated on a drawing furnished by Ferguson. The regular price of the wrapping machine alone was $1,800; the price charged for the wrapping machine plus the sealing attachment (and minus the heating appliances) was $1,900.

The machine disclosed by the patent in suit (developed in connection with a later construction for another customer) departed in some respects from the Chicago construction. Its differences, however, so far as here important, were principally in providing a hot roller and cold pressure rolls, instead of hot and cold upper plates, and lateral pressure devices in the form of blade springs (to keep the end flaps in position), instead of direct contact with the metal side rails. But it is clear that unless the construction of the Candy Company's machine involved invention, there is none in the broad claims in suit. Those involved are the first, second, third, seventh, ninth, and tenth. The first and ninth claims are printed in the margin;[1] the second, third, and tenth contain nothing calling for their reproduction.

---

[1] "1. In an apparatus for sealing articles wrapped in fabric impregnated with a readily fusible substance, the combination of a conveyor on which the articles are carried and adapted to continually advance the packages, sealing devices arranged to operate on the articles in their travel on the conveyor, means for heating said devices, and a cooling and pressing means arranged to bear on the heated portions of the articles after the same have been acted on by the heating devices, as set forth."

"9. In a machine of the character described, the combination of a package conveyor adapted to continuously advance the packages, means to en-

On a careful consideration of undisputed evidence, we are of opinion that the broad claims in suit involve no invention on Ferguson's part. The wrapping machine itself is not involved, but merely the sealing apparatus, which the patent says "can be used in conjunction with a wrapping machine, or the wrapped articles can be delivered to it by hand, as desired." The idea of heating paraffine for sealing purposes, to exclude air and moisture, was generally known, not only in the specific art but in ordinary household economy. Heating the sides and tops of the passage or chute for pasting packages was old, as already said, although the heating was for drying and not for melting. There had been in successful use, for about 25 years, the so-called "Greene machine" for sealing the top and end flaps of paraffine wrapped packages. In that machine, as aptly described by the District Judge:

"A package of popcorn was folded in waxed paper by hand and the flap edges at the side were stuck together by paste applied by hand with a brush. The packages in this form and so partially wrapped were then placed by hand into the machine, which machine, being operated by the foot, folded the waxed paper at the end of the package of corn, and the package was then kicked or forced along on a stationary metal plate, between other metal plates, which latter metal plates were heated by gas flames, causing the waxed paper at the ends of the package to liquify and by the pressure of succeeding packages it was kicked or forced on away from the heated portion and against the cooler and cooling portions of the plates, which caused the ends of the package to cool and become hermetically sealed."

The Candy Company's letter inviting the construction of the machine not only stated the result desired, but described generally the method of producing that result. Whether or not Plate's conception amounted to invention, and whether, if there was invention, the latter, as between Plate and Ferguson, should be deemed the inventor (questions we find unnecessary to decide), we are of opinion that in view of the prior art, including especially the Greene machine, and the existence of the discharge mechanism of the standard wrapping machine, in connection with the disclosures made to Ferguson, not only by Plate's letter, but by what Ferguson saw of the hand operation at the Candy Company's factory, the addition of the sealing device to the wrapping machine, whereby the upper side and both ends were sealed (instead of the ends alone, as in Greene), involved only the skill of the mechanic trained in the art. Railroad Supply Co. v. Elyria Iron, etc., Co., 244 U. S. 285, 37 Sup. Ct. 502, 61 L. Ed. 1136; Hart Steel Co. v. Railroad Supply Co., 244 U. S. 295, 37 Sup. Ct. 506, 61 L. Ed. 1148. True, the Greene device was not entirely automatic; it required action by the operator in the use of the treadle, and the sealing of the upper flap was effected only by paste, which was not as effective as by heating the paraffine. But heating and sealing three surfaces, instead of two, did not, in the then state of the art, amount to invention. Dunbar v. Myers, 94 U. S. 187, 194, 24 L. Ed. 34. True, also, Plate's disclosure did not amount to a complete anticipation, and there remained for

gage and heat the overlapped portions of the waxed wrappers of the packages transported by said conveyor whereby to soften the wax of said wrappers, and means of less temperature than said heating means adapted to bear against said heated overlapped portions to cause their adherence together."

Ferguson to work out the composition of the table, the suggested location and method of supporting the steam chests in the table, the selection of pattern of chain conveyor, the ascertainment of the amount of room the machine would take up, the proper position of the countershafts, the adjustment of the parts, the proper timing of the movement of the packages in their relation to the heating and cooling devices, and the particular form of the side guides; the assembling, testing, adjusting, and completing of the details occupied perhaps a month after the delivery of the machine at the Candy Company's factory. But we think the disclosures made to Ferguson, by Plate's letter and in connection with the visit to the candy factory, furnished sufficient information to enable a skilled mechanic to work out the details mentioned, which in other words, were in our opinion merely matters of mechanical engineering skill; and it does not appear that the time taken for working them out was unusual, in view of the fact that the machine had to be specially constructed to meet the specific requirements of the customer and its shop conditions. The steam plates used in the machine were substantially what had been used in the Candy Company's hand-operated machines; the upper steam and cooling plates formed pro tanto a covering for the chute.

[2] Favorable public reception of the device is not important, where, as here, the lack of invention is plain (Gould v. Cincinnati Shaper Co. [C. C. A. 6] 194 Fed. 680, 115 C. C. A. 74; Cincinnati Traction Co. v. Pope [C. C. A. 6] 210 Fed. 443, 449, 127 C. C. A. 175); and the large saving of labor accomplished by the machine is due in considerable part to the wrapping feature. The fact that the machine was sold under a guaranty of what it would do does not appreciably affect the question of invention as distinguished from mechanical skill. In this view, the effect of award of priority on interference becomes immaterial.

The only respect in which the seventh claim calls for special mention is that the means adapted to bear against the ends of the package after leaving the heated part are specified as "blade or leaf springs." Defendant does not employ this specific device. In the first form of its construction the inner sides of two delivery belts are pressed inwardly towards the package by "resiliently supported pressure plates"; in the other form the package passes along two side plates which are extensions of the side heaters, and thus serve to keep the end flaps in close contact. Plate's letter had suggested a "gentle pressure" for this purpose. But resilient side plates for the purpose stated were not new; it is enough to refer to Greene's device, by which the ends of the packages were held during the cooling operation by resilient extensions of the thin brass side plates whose forward ends were heated. Even were there invention in the specific adoption of the "blade or leaf springs"—which we do not hold—we think it clear that defendant does not infringe. The second construction mentioned is practically that of Greene. The first construction cannot be considered the equivalent of the "blade or leaf springs" of the patent, in view, not only of the prior art, but of their specific mention in the seventh claim, as compared with the more general "cooling and pressing means" of the first and second claims, the "means arranged to bear on the said wrappers" of the third claim, the "pressure devices at the

side of the conveyor" of the eighth claim, and the "means of less temperature than said heating means and adapted to bear," etc., of the ninth and tenth claims. See Railroad Supply Co. v. Elyria Iron Co., supra; Hart Steel Co. v. Railroad Supply Co., supra.

The decree of the District Court is affirmed.