## AMERICAN CHAIN CO., Inc., v. COX BRASS MFG. CO.

(District Court, N. D. Ohio, E. D.　May 26, 1922.)

No. 652.

1. **Patents ⊕⟶328—1,374,893, for automobile bumper, held invalid for want of invention.**

Claims 6–11 of the Pancoast and Grotenhuis patent, No. 1,374,893, for automobile bumper or fender with enlarged central or middle portion, *held* invalid for want of invention.

2. **Patents ⊕⟶37—Novelty not invention.**

Novelty alone does not constitute invention.

3. **Patents ⊕⟶17—No invention in making automobile bumper wider or in manner of making it.**

There was no invention in making central part of automobile bumper wider to protect wider area of the automobile or to make it in two parts, offsetting the central portions and riveting and clamping them together.

4. **Patents ⊕⟶91 (3)—That several persons independently had same conception held strong evidence against invention.**

That several persons living in widely separated parts of the country conceived the same idea and substantially similar method of embodying it in practically similar device, at about the same time, is strong evidence against contention that there was any invention.

In Equity.　Suit by the American Chain Company, Incorporated, against the Cox Brass Manufacturing Company.　Bill dismissed.

Fay, Oberlin & Fay, of Cleveland, Ohio, for plaintiff.

Fisher, Moser & Moore, of Cleveland, Ohio (Percy H. Moore, of Washington, D. C., of counsel), and Alan N. ·Mann, of New York City, for defendant.

WESTENHAVER, District Judge.　Plaintiff's bill charges infringement by defendant of United States letters patent No. 1,374,893, issued April 12, 1921, to William J. Pancoast and William J. Grotenhuis, and by them assigned to the plaintiff.　Claims 6 to 11, inclusive, only· are in issue.　The defenses mainly relied on and urged in argument are :　(1) Invalidity for want of invention.　(2) Invalidity because the patent contains a needless multiplication of nebulous and indefinite claims calculated to mislead and deceive the public.　(3) Invalidity because the alleged invention was sole and not joint.　If the claims relied on are valid, defendant does not deny infringement, although defendant's construction is likewise made in conformity to United States letters patent No. 1,371,605, issued March 15, 1921, to Theodore M. Cox, and by him assigned to the defendant.

[1] The subject-matter of this litigation is the familiar automobile bumper or fender.　The distinguishing and alleged novel element of plaintiff's construction is its enlarged central or middle portion.　In the patent this portion is referred to as "a vertically expanded impact face," "a vertically offset impact portion intermediate of its ends," and "a vertically offset portion intermediate its ends."　The enlarged portion thus referred to is between brackets attached to the side frames of the car and supporting the bumper.　Plaintiff's preferred form of construction is made by offsetting downwardly at this central portion

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the bumper bar and clamping thereto a similar plate offset upwardly. Fig. 2 of the patent best shows this preferred construction.

All the features and elements of this construction are admittedly old, with the single exception of this enlarged impact face. The specific prior patent art goes back as far as 1907. This prior art shows single and double bar bumpers made of diamond and tubular shaped bars and of channel bars, with both free and the curved ends attached by brackets to the car frame. It also shows single and double bar bumpers made of flat plates of resilient steel with curved and looped ends similarly attached to the car frame. The printed catalogues introduced in evidence disclose and illustrate many bumpers of these several types.

It is not necessary to review this prior art in detail. United States letters patent No. 908,025, issued to Allen L. MacGregor December 29, 1908, discloses a double bar bumper made of tubular bars and with curved free ends. Halliday's catalogue, plaintiff's Exhibit 11, shows numerous types of bumper made of diamond and channel bars with curved free ends. United States letters patent No. 1,191,306, issued to T. A. Hoover July 18, 1916, is the earliest disclosure of a bumper made of resilient steel with looped or reversely curved ends. United States letters patent No. 1,198,246, issued to George A. Lyon September 12, 1916, on application filed April 21, 1913, discloses a bumper made of flat bars of resilient steel, containing every feature and element of plaintiff's bumper except the enlarged central portion. It is, with this single exception, undoubtedly an anticipating device realizing all of the other advantages, except the protection of a wider surface, claimed for plaintiff's bumper. In addition thereto, attention is called to United States letters patent No. 1,247,142, issued to E. Parradee November 20, 1917, and United States letters patent No. 1,-354,633, issued to Richard Tossell, on an application filed December 26, 1918. Tossell's patent is both a double and single bar bumper, made of flat resilient steel, with members projecting upwardly and downwardly in line with the supporting brackets, giving the wider area of protection sought to be obtained by the enlarged middle portion of plaintiff's bumper. This patent, however, is said not to be a part of the prior art construction, though both its application and patent date are prior to plaintiff's patent, because of testimony produced at the hearing tending to carry the Pancoast and Grotenhuis invention date back to 1917. For the purposes of this case, this priority may be conceded.

Thus it will appear that the validity of the patent sued on depends exclusively upon its enlarged central portion. This patent is for a combination; and while it must be admitted that all the features and elements of the combination except this one are old in the art, it is urged that this enlargement of the middle portion is novel not only as a conception but as to the embodiment thereof in a bumper, and is such an advance over the prior art as to arise to the dignity of invention. Before determining this contention, reference will be made to some of the prior art showing an enlarged or expanded central portion on fenders and bumpers.

292 F.—40

Numerous patents are cited, of which a few only of those relating to automobile bumpers or fenders need to be examined. United States letters patent No. 863,124, issued to Dante J. Welton August 13, 1907, discloses a bumper, called in the application a fender, for motor vehicles, with an enlarged central portion tapering towards its ends. The drawings show this fender round in form, but the specifications say what would otherwise be perfectly obvious, that it may be made of any standard shape, and "that the exact shape and arrangement of fender must necessarily be varied to suit the different sizes, styles and shapes of motor vehicles." The diameter of its enlarged central portion is apparently equal to the vertical cross-section of the enlarged middle portion of plaintiff's bumper. It affords the same protection as is performed by the enlarged central portion of the patent sued on. If it were made of flat resilient steel and had added thereto the reversely curved ends or loops of Hoover or of Lyon, it would be indistinguishable from plaintiff's construction, except as to the central opening in the enlarged central portion.

British patent 7172, issued March 21, 1907, to Richard Bonfield, discloses a multiple bar bumper made of flat steel with the central portion of the upper bar offset downwardly in substantially the same manner as plaintiff's, and with a straight bar, removably inserted, closing the top of such offset portion. In addition thereto, attention is called to United States letters patent No. 1,202,690, issued to Rollie B. Fageol October 24, 1916, on application dated June 6, 1910, and United States letters patent No. 1,180,418, issued to Andred P. Olsen April 25, 1916, both of which show automobile bumpers with enlarged middle portions of wider protective areas in the center thereof.

[2, 3] None of these patents, nor any of the others cited, show plaintiff's exact method of enlarging the central portion of the bumper. Novelty alone, however, is not invention. Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co. (2 C. C. A.) 276 Fed. 910. The question is whether Pancoast and Grotenhuis' conception, or the practical embodiment of it, is either one or the other such an advance over the prior art as to amount to an invention, or required the exercise of ingenuity beyond that of a mechanic skilled in this field of industry. It would seem obvious to the simple mind that if a single bar bumper is not wide enough in any place to protect the area which one desires to protect, the only thing to do is to make it wider. Shields, fenders, and devices for purposes of protection are of immemorial antiquity. In the World War, when it was realized that some protection against shrapnel fire would be serviceable, the need was at once answered by the development of the steel helmet. In a commercial sense the steel helmet was new, but in a patentable sense it was not novel nor an invention. No inventive genius was involved either in the conception or in the embodiment of it in a practical device. It seems equally obvious that if it is desirable to protect a wider area in the central part of an automobile, the thing to do was to make the bumper wider at that part. No invention, it seems to me, is involved in the conception.

The question remains, however, whether or not the practical device, embodying this conception, is so ingenious as to amount to invention. Is or is not plaintiff's construction, in view of the prior art, an in-

vention in the sense of the patent law? The answer, it seems to me, is best stated by Mr. Justice Matthews in Hollister v. Benedict Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901, in these words:

"All that remains to constitute the invention, seems to us not to spring from that intuitive faculty of the mind put forth in the search for new results, or new methods, creating what had not before existed, or bringing to light what lay hidden from vision; but, on the other hand, to be the suggestion of that common experience, which arose spontaneously and by a necessity of human reasoning, in the minds of those who had become acquainted with the circumstances with which they had to deal. * * * It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; and is in no sense the creative work of that inventive faculty which it is the purpose of the Constitution and the patent laws to encourage and reward."

So, in this case, the skilled mechanic, having before him the prior art already summarized, and endowed with the skill and intelligence to be expected of one trained in this line of industry, would naturally and spontaneously develop the device adopted by Pancoast and Grotenhuis, or by Theodore M. Cox, or by Richard Tossell. If one had taken the single bar bumper of Hoover, Lyon, or Parradee and merely enlarged or expanded it in the central portion, no one, I fancy, would assert that this amounted to invention. If, after having done so, one had then cut away the central portion thereof so as to produce the open space in the enlarged central portion, no one, I fancy, would assert that this amounted to invention. If, having done so, some shop foreman or superintendent desiring quantity production had suggested that it was easier and more economical to make the bumper in two separate parts offsetting the central portions and later riveting and clamping them together, it would be a strong claim to urge that the inventive genius or faculty rather than the mechanical skill of a foreman or superintendent had been called into play. In its final analysis, Pancoast and Grotenhuis have done nothing more.

[4] The experiences of Pancoast and Grotenhuis, of Theodore M. Cox, and of Richard Tossell, in developing independently their several bumpers, support strongly this conclusion. Tossell, it is conceded, is later in time than Pancoast and Grotenhuis, although both his application and patent dates are prior. Pancoast and Grotenhuis were awarded priority over Cox in an interference proceeding, although his patent was issued earlier. It is not suggested, and nothing appears to show, that any one of the three borrowed anything from the other. They lived in widely separated parts of the United States. That the same conception, and a substantially similar method of embodying that conception in a practical device to give protection to a larger area of the front end of an automobile, occurred spontaneously and independently to each of them, makes strongly against the contention that any inventive faculty was called into play. All of these applications were co-pending, and Cox was awarded a patent upon his invention notwithstanding he was denied priority. I am at a loss to understand why a patent was issued to Cox, because his drawings and specifications are

almost an exact copy of Pancoast and Grotenhuis. The identity was so exact that on this hearing learned counsel did not even suggest any ground of distinction as a basis for denying infringement. Skilled mechanics have developed numerous variations both of the Pancoast and Grotenhuis and of the Cox bumper. See L. P. Halliday Company's catalogue, plaintiff's Exhibit 11, pages 2, 3, and 4; Genco Manufacturing Company's catalogue, plaintiff's Exhibit 16, pages 4, 5, 6, 8, and 9; and defendant's Exhibit r.

Upon careful study my conclusion is that plaintiff's alleged invention falls within that class discussed by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438. It is but the natural and proper outgrowth of the process of development in manufacturing, and to sustain inventions for such insubstantial advances in industry would tend to obstruct rather than to stimulate invention. His language has become a classic and has been reiterated and applied so often that it will be sufficient to refer to a few of the leading cases. Package Mach. Co. v. Johnson Automatic Sealer Co., 246 Fed. 598, 601, 158 C. C. A. 568; Railway Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 37 Sup. Ct. 502, 61 L. Ed. 1136; A. Schrader's Son, Inc., v. Dill Mfg. Co. (6 C. C. A.) 262 Fed. 504.

Plaintiff's argument, and authorities cited in support, that the simplicity of an invention and the obviousness of a solution of any problem is not to be determined by looking backwards after the fact, have been given full consideration. Likewise, plaintiff's evidence tending to show commercial success, the argument based thereon and the authorities cited in support thereof have not been overlooked. This commercial success is insignificant compared with that shown for the Jay patent; but, notwithstanding this success and the displacement thereby of gravity and pressure feed systems on automobiles in 90 per cent. of the cars made and sold, the Jay patent was sustained only on very narrow grounds. Jay v. Weinberg (7 C. C. A.) 262 Fed. 973; Sparks-Withington Co. v. Jay (6 C. C. A.) 270 Fed. 449. And notwithstanding these decisions, the Jay construction was held to infringe two prior patents for vacuum gasoline feed systems not cited and relied on in the prior litigation as anticipations. See Seager v. Stewart-Warner Speedometer Corporation (D. C.) 277 Fed. 824. Plaintiff's claim of commercial success and displacement of other devices fall within Judge Hough's comments in Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co. (2 C. C. A.) 276 Fed. 910.

My conclusion is that claims 6 to 11, inclusive, of the Pancoast and Grotenhuis patent, are invalid for want of invention. This conclusion renders unnecessary a consideration of the other defenses relied on. A decree will be entered dismissing plaintiff's bill at its costs.