## STANDARD PARTS CO. et al. v. CLEVELAND WELDING & MFG. CO.

(District Court, N. D. Ohio, E. D. March 20, 1923.)

No. 777.

Patents ⬅⇒328—1,153,481 and 1,153,482, for driving connections on automobile wheel, held anticipated and lacking in invention.

The Bryant patent, No. 1,153,481, claims 2, 5, and 7, and Bryant patent, No. 1,153,482, both for improvements in driving connections between felly and auxiliary tire carrying rim of automobile wheel, *held* anticipated, and, if not anticipated in part, to involve no invention to the extent not anticipated.

In Equity. Suit by the Standard Parts Company and another against the Cleveland Welding & Manufacturing Company. Bill dismissed.

B. M. Kent, of Cleveland, Ohio, for plaintiffs.
Hull, Brock & West, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. Plaintiff's bill charges infringement of two United States letters patent, No. 1,153,481 and No. 1,153,-482, both issued September 14, 1915, to the Standard Welding Company, assignee of Richard S. Bryant, the inventor, and both now owned by plaintiff. Claims 2, 5, and 7 are in issue. The defenses are invalidity for lack of novelty and invention; also as to No. 1,153,482, invalidity because of double patenting; and as to No. 1,153,481 that no action thereon can be maintained because a proper disclaimer was not filed within due time after discovery that there was included in the patent a material part of the thing patented, of which Bryant was not the original inventor. If these defenses are not sustained, infringement is not denied.

The Bryant device relates to the driving connections between the rim felly and the auxiliary tire-carrying rim of an automobile wheel. The development of the automobile tire with its inextensible beads or inner edges produced the problem of mounting it upon the wheel or rim. In solving this problem was developed an auxiliary tire-carrying rim, separate from the wheel felly and detachable or demountable therefrom. In that type of auxiliary rim known as the "quick demountable bolted-on type," a narrow annular space or opening is left between the auxiliary rim and the wheel felly. Wedge lugs, or a wedge ring, were bolted into this aperture to secure and hold firmly the tire-carrying rim in position upon the wheel. The wedge connection of the lugs or ring was found or deemed insufficient protection against the tendency of the auxiliary rim to creep circumferentially upon the wheel felly. To overcome and prevent this tendency, devices called "drivers" or "driving connections" were interposed in this annular aperture, which, by co-operation with each other and with the rim and felly, perform the required function.

Bryant's inventions pertain to these drivers or driving connections. In patent No. 1,153,481, two similar-spaced driving lugs are stamped

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes .

up from and integral with the material of the wheel felly, and their juxtaposed edges are severed from the felly so as to form abrupt shoulders. A plate is riveted or welded on the demountable rim and so positioned that its opposed edges or shoulders are interposed between and engage the abrupt shoulders of the stamped-up lugs, thereby completing the driving connection and preventing the circumferential creeping of the auxiliary rim on the wheel felly. The alleged invention embodied in No. 1,153,482 consists in stamping down from the auxiliary rim and integral with the material thereof, this driving plate. Plaintiff concedes that every element and feature of both these patents were old in the art and in these specific combinations, except in one or the other of two specific details. It is asserted that the art prior to Bryant consisted in forming the two similar-spaced lugs upon the wheel felly and the single lug on the auxiliary rim by welding or riveting separately formed plates; or that, at the most, the two similar-spaced lugs of the wheel felly, whenever in the prior art they were stamped up from and integral with the metal of the felly, were severed from the felly on the sides as well as on the juxtaposed edges. Upon these concessions, plaintiff's alleged invention comes down to this: As to the first patent, he refrains from severing the lug sides from the felly, and, as to the second patent, he stamps the lug from the rim instead of by welding or riveting it to the rim.

Of the prior art, three United States letters patent only need to be reviewed, namely: No. 956,611, issued to W. Tischbein May 3, 1910, on an application filed July 29, 1908; No. 1,177,460, issued to J. H. Wagenhorst, March 28, 1916, on an application filed June 10, 1912; and No. 1,244,022, issued to W. N. Booth, October 23, 1917, on an application filed December 15, 1913. On the record of this case, Tischbein stands at the head of this driving connection art; indeed, if his patent is to be given the usual range of equivalents due to a primary patent, it is difficult to see how there was patentability left to either Bryant or Booth, or how either of them could avoid a charge of infringement. Every element and feature of Booth and Bryant, separately and in combination, will be found in Tischbein. He dealt consciously with the same problems and attempted to solve them in precisely the same way. His invention was made to overcome the tendency of the auxiliary rim to creep or move circumferentially relatively to the main rim. He appreciated the danger to the valve stem from such a movement and the inadequacy of the wedge ring or lugs to overcome it. To solve these problems, he provided two similar-spaced drivers on the wheel felly with abrupt juxtaposed shoulders, and a single projection on the auxiliary rim so positioned as to fit into the space intervening between the two drivers and engage their abrupt shoulders. He locates them in the same position as did Bryant, with an aperture in the single projection for the valve stem. He did not limit his invention or his claims to these exact positions, but provided for a reversal of position which would place the two spaced projections on the auxiliary rim and the single projection on the wheel felly. In claim 2 and in his preferred form, as disclosed by the drawings and specifications, the two spaced projections are located on the wheel felly and a single

one on the auxiliary rim. In claim 1, however, claim is made for either or both positions. It seems obvious, however, that a reversal of these positions would be optional forms and within the ability of any skilled mechanic to make, even if Tischbein had not specifically pointed out that this could be done and claimed the right so to do.

Plaintiff seeks to avoid Tischbein as an anticipation by stressing the form of Bryant's driving connections. Physical exhibits of the prior art were presented on the trial, in which the driving connections are separately formed and either welded or riveted to the felly and rim. It is asserted that this is all that was disclosed or is claimed by Tischbein. We do not so understand his patent. The driving connections are not described by him as welded or riveted plates, nor is the inference warranted that he contemplated that they should not be made integral with the metal of the rim or felly. On the contrary, he describes them as "spaced projections" or as "the projecting portion" or as "projections on said rims" or as "a single projection on the other rim." Neither the specifications nor the claims are limited to plates separately formed and welded or riveted to the felly and the rim. Obviously, therefore, the two spaced projections, as well as the single projection, may be formed in any manner appropriate for the purpose. In the Bryant patents it is said that lugs of proper form and disposition may be made "by stamping or embossing." Likewise, spaced projections, as called for by Tischbein, may be made by stamping or embossing. The word "projection" aptly describes an element made integral with the metal from which it projects, either by stamping or embossing, or any other well-known method of the metal-working art.

In Wagenhorst, the novel construction devised by him to prevent circumferential creeping is said in the specifications to be made by pressing up from the felly band and downwardly from the rim. It is true that the two spaced driving connections pressed up from the felly band are called by him "ridges," and the co-operating element pressed down from the rim is called a "boss." The pertinent materiality of this disclosure is to show that the spaced projections of Tischbein might equally well be made by pressing or stamping upwardly or downwardy, as preferred, the two spaced projections and the single projection, thereby making both integral with the metal of the felly and the rim.

The issue date of Booth is later, but the application date is earlier than the same dates of the two Bryant patents. Concededly, however, priority of invention is with Booth. After the Bryant patents were issued, an interference was declared between Booth's application then pending, and the Bryant patent No. 1,153,481. For the purposes of this interference, Booth adopted as a part of his application claims 1, 3, 4, 6, 8, and 9 of Bryant's patent as already issued. On August 17, 1917, judgment was rendered, finding priority of invention with Booth. This finding was made pursuant to the consent and on the admission of Bryant and was accompanied by a waiver of his right of appeal. Booth was accordingly awarded a patent containing claims 1, 3, 4, 6, 8, and 9 of the first Bryant patent involved in this suit, and nothing was left to Bryant except claims 1, 5, and 7 now in issue.

The only difference between these three remaining claims and the six awarded to Booth is found in the limiting words at the end thereof, "and remaining attached to said band along their remaining edges" as applied to the two spaced lugs. That this limiting language applied by claims 1, 5, and 7 to the final form of the lugs distinguishes these claims over claims 1, 3, 4, 6, 8, and 9 awarded to Booth, may well be doubted. Booth did not thus limit his invention, either in his specifications or in his claims,. although the patent drawings show the stamped-up lugs apparently severed at the sides as well as at the juxtaposed edges. The specifications say that these lugs "are struck up out of the body portion of the felly rim and pointing towards each other." In the claim it is said:

"These two similar-spaced driving lugs are stamped up from and integral with the material of said band, said lugs being severed from said band along their juxtaposed edges so as to form abrupt shoulders."

It would be an extremely narrow construction of this language to limit it to lugs severed from the band on opposite sides as well as on the juxtaposed edges. To construe this language as excluding lugs stamped from and integral with the band and severed only at their juxtaposed edges so as to form abrupt shoulders would be doing violence to its language. On the contrary, according to the usual rule of construction, an express direction to sever the lugs from the felly band at their juxtaposed edges would exclude the idea that they were to be severed at the sides as well. In any event, Bryant's supposed invention—his step forward, if any, in the art—consists wholly in refraining from severing the lugs at the sides. This is an exceedingly narrow base upon which to rest a claim of novelty, and still more so to rest a claim of invention. It is the mere shadow of a shade of an idea. Atlantic Works v. Brady, 107 U. S. 200, 2 Sup. Ct. 225, 27 L. Ed. 438.

Two prior uses are cited and relied on. One is that of the Standard Welding Company as early as 1909. It may be disregarded because it is of the same type as Booth, and adds nothing to it. The other is an alleged shop practice of the Kelsey Wheel Company, with which W. N. Booth is, and at the time his patent was applied for and issued was, connected as superintendent. This use, as described by Booth, is precisely the same as Bryant; that is, two similar-spaced lugs were stamped up from the felly band and severed only at their juxtaposed edges and left attached at the sides, and the single co-operating lug was stamped down from and integral with the rim and severed therefrom at its opposite edges. The proof of this use rests on Booth's oral testimony, supported by shop drawings. His oral testimony is somewhat confused as to the exact date when this manner of forming the lugs was first adopted and used. The shop drawings exemplifying it and produced by him are dated prior to Bryant. However, in view of the fact that Booth's patent application was filed at a date later than these drawings and disclose the lugs as severed at their sides, and in view of the rule as to the character of evidence required to show a prior use, it does not seem to me that this use is sufficiently proved. My

decision will be rested upon the prior patent art, as to the dates of which no controversy exists.

Bryant's second patent, No. 1,153,482, differs from the first patent only in that the single driver of the demountable rim is also made by stamping it integrally from the rim, instead of by riveting or welding thereto a plate, such as is shown in the first patent. This reversal of positions is plainly within the skill of the ordinary mechanic. It is disclosed and claimed by Tischbein. It is likewise disclosed and claimed in claims 6 and 7 of Booth; in fact, these claims 6 and 7 were claims 8 and 9 of the first Bryant patent and were added thereto during the pendency of Bryant's application, as a result of an argument made by his solicitor that such a reversal of positions was clearly within the scope and purport of his original drawings and specifications. Hence, as to the second patent, any question of novelty or invention resolves itself into the method of depressing or stamping this driving connection or lug from the metal of the rim or felly and severing its juxtaposed edges so as to form abrupt shoulders, to engage and cooperate with the abrupt shoulders of the two similar-spaced driving connections. Obviously, if Tischbein, Wagenhorst, or Booth had taught or disclosed the idea of practice of making the two spaced driving connections by stamping or embossing projections upon or from the felly or rim and integral therewith, no invention is present in applying the same process to any part of either the felly or the rim. As already stated, this method of forming driving connections was disclosed by the prior art, and is specifically disclosed by the first Bryant patent as applied to the similar-spaced driving connections on the wheel felly. It results that whether novelty or invention is present in the second Bryant patent depends on the same considerations as must be applied in determining whether or not it is present in the first patent.

To sum up, my conclusion is that both patents are anticipated by Tischbein and by Booth. If they are not thereby anticipated, certainly, in view of the teachings and disclosures of Tischbein, Wagenhorst, and Booth, no invention is present in either of them. No new or different result is obtained by Bryant. The lugs perform no new and different function over the lugs of the prior art. They do not perform it in any materially better way. In forming these lugs, he has merely used a different die from that required to stamp the lugs disclosed by the Booth patent drawings. In so doing, he has at most merely carried slightly forward or made more specific the teaching of Tischbein, Wagenhorst, and Booth. As compared with Booth, the most that can be said is that he has refrained from severing the sides of the lug from the material of the wheel felly. This advance or step forward is, it seems to me, such only as would naturally suggest itself to the skilled mechanic. Whether it should be done one way or the other is probably more a shop expedient than a new idea. In the language of Mr. Justice Bradley (107 U. S. 200, 2 Sup. Ct. 231, 27 L. Ed. 438), this is a "shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures."

Due consideration has been given to Kurtz v. Belle Hat Lining Co.,

(2 C. C. A.) 280 Fed. 277, cited and relied on by plaintiff's counsel. The opinion of Judge Hough excites one's admiration by its ability and learning; yet I cannot escape an impression that as applied to the patent then under consideration, he has somewhat lowered the high standard of invention insisted on by the Circuit Court of Appeals of this circuit and by the Supreme Court of the United States. Be that as it may, the patents here under consideration must be held to be improvidently granted, on authority of Atlantic Works v. Brady, 107 U. S. 199, 2 Sup. Ct. 225, 27 L. Ed. 438, repeated and approved in Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 293, 37 Sup. Ct. 502, 61 L. Ed. 1136, also reiterated and approved in A. Schrader's Sons, Inc., v. Dill Mfg. Co. (6 C. .C. A.) 262 Fed. 504. See, also, the following cases from the Sixth Circuit Court of Appeals: Huebner-Toledo Breweries Co. v. Mathews Gravity Carrier Co., 253 Fed. 435, 165 C. C. A. 177; Berger Mfg. Co. v. Trussed Concrete Steel Co., 257 Fed. 741, 169 C. C. A. 29; Van Dorn Iron Works v. Mathis Bros. Co., 260 Fed. 400, 171 C. C. A. 266; Package Machinery Co. v. Johnson Automatic Sealer Co., 246 Fed. 598, 158 C. C. A. 568; Vandenburgh v. Truscon Steel Co. (C. C. A.) 277 Fed. 345.

The conclusion to which I have come makes it unnecessary to determine whether the second Bryant patent is invalid for double patenting, as is insisted by defendant, on authority of Thomson-Houston Elec. Co. v. Western Elec. Co. (2 C. C. A.) 158 Fed. 813, 86 C. C. A. 73; Miller v. Eagle, 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. This likewise renders it unnecessary to determine whether plaintiff is barred from maintaining an action because of failure to file disclaimer in the Patent Office for more than five years after having learned from the interference proceeding that there was included a material part of the thing invented, of which Bryant was not the original inventor, as is also insisted by counsel for defendant, on authority of sections 4917 and 4922, Rev. Stat. of U. S. (Comp. St. §§ 9462, 9468); Hailes v. Albany Stove Co., 123 U. S. 582, 8 Sup. Ct. 262, 31 L. Ed. 284; Walker on Patents (5th Ed.) § 203 et seq.

Plaintiff's bill will be dismissed, at its cost.