### LEISHMAN v. ASSOCIATED WHOLESALE ELECTRIC CO.

#### No. 1463-BH.

District Court, S. D. California, Central Division.

Jan. 31, 1941.

John Flam, of Los Angeles, Cal., for plaintiff.

Lyon & Lyon, of Los Angeles, Cal., and Gibson Yungblut, of Cincinnati, Ohio, for defendant.

HARRISON, District Judge.

This is an action for infringement of reissue patent No. 20,827, issued August 16, 1938, upon application dated May 23, 1938. The original patent, under No. 2,-108,538, was issued February 15, 1938. Claims 7, 8, 9, 10 and 11 only are involved.

The principal defenses are invalidity, lack of infringement and intervening rights.

The Crosley Corporation of Cincinnati, Ohio, the manufacturer of the accused device, has assumed the defense of this action.

The reissue patent is a device for the manual operation of a tuning mechanism for a radio receiving set and is designated in the patent as "Means and Method for Turning Rotatable Objects to Pre-determined Positions". The original patent consisted of six claims, only one of which pertained to a radio tuning device. The reissue patent in suit contains twelve claims. Heretofore, plaintiff has disclaimed claim 5 in its entirety and filed qualifying disclaimers involving claims 8, 9 and 10. The patent in suit covers a device not only for the automatic setting of a dial of a radio receiving set, but also for the simultaneous setting of both a radio and television receiving set by one operation. In this case we are only concerned with the device in so far as it applies solely to a radio receiving set.

Prior to the patent of plaintiff, the industry had used but two different manually operated devices for the tuning of a radio set by automatic means. Originally, the Zenith Radio used a device patented by J. M. Schaefer, under patent No. 1,906,106, issued April 25, 1933, but after a couple of years' use it was discarded. At the time the original patent was issued to plaintiff, the radio industry was using what was known as "Telephone Dial Type" tuning device. This type was considered by the industry as a makeshift.

The physical part of the patent consists of a rocker and an adjustable tappet. The rocker rotates on a shaft that is connected with the hand of the dial of a radio and as it rotates it moves the hand of the dial to a predetermined station. The rocker is moved from one position to another by the movement of the tappet, which is brought into contact with the rocker by a cash register type lever. Through adjustable means the tappet is set so that it will revolve the rocker to a predetermined position, which in turn will move the hand of the dial to a predetermined point on the dial of the radio. There is a recess in the rocker which enables the axis of the tappet to become coaxial with the axis of the rocker. The combination of the rocker with an adjustable tappet, which are coaxial when completely engaged represents, if any, the patentable features of the claims involved.

The evidence in this case discloses that the Crosley Corporation, in the later part of 1936 or the early part of 1937, requested its engineering department to design a push button type tuner, but up until August, 1938, such a tuner had not been developed. The advertisements carried by the corporation in the fall of 1937 still carried the "Telephone Dial Type" tuner as a feature of its radio products.

In August and September, 1937, plaintiff conferred with certain officials of the Crosley Corporation and attempted to interest them in a patent he had on a different type of tuner represented by Patent No. 2,084,851, but the negotiations came to naught.

In the fall of 1937, the engineering department of the Crosley Corporation developed independently the accused tuning device. The plaintiff contends that ·its tuner was borrowed from his˙ invention but I have been unable to find anything in the record that justifies this contention. In fact, the plaintiff testified in substance to the effect that he made no disclosures of the device in suit to the Crosley Corporation until after its tuner was on the market. The file wrapper of Patent No. 2,084,-851 discloses drawings of the patent in suit and plaintiff insists that the "independent discovery" of the Crosley Corporation was obtained from this file wrapper, but there is no evidence to this effect; in fact, the evidence is to the contrary. Such appropriation cannot be inferred from such circumstances. They tend against the presence of invention. American Chain Co., Inc., v. Cox Brass Mfg. Co., D.C., 292 F. 624.

, The accused device met all the requirements of the industry. It was simple, compact and inexpensive to manufacture. The tuning device described in plaintiff's patent was a bulky piece of mechanism due to the cash register type of lever used as the operating means, while the accused device used a push button or plunger as the operating means. But it cannot be seriously denied that the accused device uses the rotatable rocker, adjustable tappet and when brought to rest the two parts· are coaxial—the essential elements contained in the plaintiff's structure.

Defendant insists that the patent of the plaintiff fails to demonstrate inventive genius. In discussing this feature of the litigation I am appreciative of the fact that there is no method by which a court can determine the exact point at which mechanical skill rises to the dignity of inventive genius. It is dependent upon the judgment of the court before whom the case is being heard, and as a case passes through different courts on its route to finality, different minds react differently upon the same set of facts. McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800; Automatic Draft & Stove Co., Inc., v. Auto Stove Works, D.C., 34 F. Supp. 472.

The plaintiff vigorously contends that the case at bar presents an ideal setting for an invention. All the customary features are present; a demand existing over a ˙long period of time; experiments seeking to fill it; eventual success and wide acceptance by the industry. He further insists that this inventon comes clearly within the purview of the land mark case of Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U. S. 45, 43 S.Ct. 322, 67 L.Ed. 523. See also Johnson Co., Inc., v. Philad Co. et al., 9 Cir., 96 F.2d 442. Clearly, if plaintiff's contentions are correct, we would be faced with evidence of invention. It will therefore be necessary to analyze his contentions and examine each .one in detail in order that proper consideration may be given this evidence. The question whether mechanical skill or inventive genius is involved is a question of fact. Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 44 S.Ct. 533, 68 L.Ed. 1098.

Plaintiff's first premise is that there has been a demand in the industry for a long period of time for a successful tuner. The facts in this case do not indicate an appreciable demand for a tuner until about the fall of 1936. The Schaefer patent No. 1,906,106 was issued in 1933 and the Flaherty patent No. 1,948,373 in 1934. The evidence reveals no other issued patents until 1937 and 1938 when the plaintiff obtained two patents. The record discloses that there was a tuner electrically controlled and the "Telephone Dial Type" tuner in limited use at the time of the issuance of the patent of which the reissue is an off shoot.

When one examines the various decisions that use the expression "a long period of time", generally speaking the facts will reflect a period of several years. In Eibel Process Company v. Minnesota & Ontario Paper Co., supra, the demand existed for years. In Gilbert Spruance Co. v. Ellis-Foster Co., 3 Cir., 114 F.2d 771, a forward step had been sought from 1919 to 1936; Washburn & Moen Mfg. Co. et al. v. Beat'Em All Barbed-Wire Co. et al., 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154, at least six years; Kelley v. Coe, 69 App.D.C. 202, 99 F.2d 435, thirty years; Webster· Loom Co. v. Higgins, 105 U.S. 580,· 26 L.Ed. 1177, for years. When the time element is considered as evidence of invention, naturally greater weight will be given· where a demand has existed in a particular field for many years, than where the demand has existed for a comparatively short time. The shorter the

time, the weaker does this evidence become.

The demand for an automatic tuning device did not become acute in the radio industry until the later part of 1936 or the early part of 1937. This is demonstrated in many ways. The record discloses a dearth of inventions in this field. The plaintiff's original patent was primarily for a simultaneous tuning device for a radio and television receiving set, evidenced by the fact that but one claim out of six applied solely to radio tuning. But the strongest evidence comes from the lips of the plaintiff when he testified, in response to an inquiry by the court, that the development in the radio industry itself made it feasible to use an automatic tuner that they could not use before. He further testified that the "automatic frequency control circuits were developed about this time by means of which, if you got a receiver almost in tune, this circuit would pull it in tune; some manufacturers referred to that type of tuning as magnetic tuning because it would pull it right in tune."

Thus it will seem that instead of a demand over a long period of time, as a matter of fact the industry had not been developed to the point where an actual and existing demand had been created. It seems to me that it was a case of one step following another. One improvement calling for another. New York Scaffolding Co. v. Chain Belt Co., 254 U.S. 32, 41 S. Ct. 21, 65 L.Ed. 116.

■ Under plaintiff's second premise, the evidence discloses that the Crosley Corporation was experimenting for less than a year endeavoring to develop a simple, compact, inexpensive tuner, and after a lapse of time developed the accused device as hereinbefore related, which fact in itself tends to negative invention. Ruben Condenser Co. v. Copeland Refrigeration Corporation, 2 Cir., 85 F.2d 537.

■ The third premise is eventual success and wide acceptance by the industry. The evidence discloses that licensees of plaintiff have manufactured about 50,000 sets of tuners. The Crosley Corporation has placed several hundred thousand upon the market. The device has proven a success and has received wide acceptance. The plaintiff claims this commercial success is due to his invention, the Crosley Corporation maintains it pioneered this style of tuner and created the present existing demand. The Crosley Corporation was the first to place this type of tuner on the market and unquestionably created the demand. While, as I have stated before, it contained plaintiff's combination, the adoption of the push button or plunger means of operation was one of the primary factors of its success, because only through this means of operation was it possible to construct a device that has the required compactness—a definite requirement of the industry. Commercial success is not necessarily established by evidence of devices built under licensing agreements. Ruben Condenser Co. v. Copeland Refrigeration Corp., supra.

■ With this background, coupled with the presumption of validity, I shall consider the advancement over the prior art made by the plaintiff and examine closely the elements that enter into plaintiff's patent. As stated before the combination consists of a rocker and tappet. Insofar as the rocker and tappet are concerned, both were fully anticipated in the Marschalk patent (No. 2,072,897, issued March 9, 1937). Plaintiff admitted that after his patent had been issued he learned of the Marschalk patent and then realized his rocker and tappet were fully covered in the earlier patent and this fact was the motivating reason for his disclaimer of claim 5 of the reissue patent. Claim 5 of the reissue patent is identical with claim 5 of the original patent and this is undoubtedly the reason the plaintiff hesitated to base an infringement suit on the original patent, but preferred to withhold action until the issuance of the reissue patent in suit. Rockers and tappets are also used in the Woodbridge patent (No. 585,996, issued July 6, 1897) and in the Miller patent (No. 2,014,358, issued September 10, 1935). Consequently, if the patent in suit rises to the dignity of an invention, it must depend upon the adding to this former combination the coaxial relationship when the two parts are completely engaged. In this respect, I have not lost sight of the fact that plaintiff's patent does not consist of three separate elements but all three combined. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805.

■ Therefore, in order to properly appraise plaintiff's patent it is necessary to

ascertain the part this coaxial relationship plays in the plaintiff's combination. Cash registers use a rocker and tappet as demonstrated by the Woodbridge and Miller patents but do not rely upon the coaxial relationship. Why? Because when the machines are built, the manufacturer knows the various amounts that it is going to be necessary for the user to ring up, consequently, he governs the position of the rocker by the shape of the tappet that engages it. But in the radio industry the manufacturer cannot predetermine the stations in the various territories that are usable nor can he predetermine the idiosyncracies of the ultimate user. As a result any radio tuning device must be easily and accurately adjusted in the home of the purchaser. Inasmuch as the movement of the rocker is controlled by the angle that the tappet is set when the two become completely engaged, it is necessary to be able to easily adjust the position of the tappet. Therefore, the problem before any person desiring to adapt a rocker and tappet to a radio tuning device was to develop a means for an accurate and simple method of adjusting the tappet so that it would, when in complete engagement with the rocker, rotate it to the angle required to bring in the particular station that the user might designate. Did this require mere mechanical skill or call into being inventive genius? As heretofore mentioned the plaintiff at the time of the filing of his application for patent honestly believed that he had invented the rocker and tappet, but later ascertained that the life of his patent must depend for its sustenance upon the combination of these two elements with the coaxial relationship when completely engaged. However, he was charged with such knowledge. Walker on Patents, Deller Ed., Vol. 1, p. 118.

The fact that the original claim No. 5 made no claim to coaxial relationship and much stress placed thereon in the reissue patent, and that the reissue was not applied for until after plaintiff examined the accused device and became aware of the Marschalk patent, tend to lead one into the belief, that the coaxial relationship was an afterthought, brought into being to save his patent from the defense of anticipation.

The coaxial relationship is only important as a means of insuring accuracy at the time of the adjustment of the tap-

pet. It is of importance in that respect for the reason that when the rocker is turned to the proper position for the bringing in of the desired station, the loosened tappet when brought into engagement with the rocker, may be set in proper position by the adjustable means, free from any play. Any play would result in inaccuracies that would destroy the effectiveness of the device. The mechanical problem therefore was to ascertain a means for the accurate and simple adjustment of the tappet. The evidence clearly discloses that the mechanical department of the Crosley Corporation had little trouble in solving this particular problem when it decided upon the use of the rocker and tappet combination. The Marschalk patent used an adjustable means for the adjusting of the tappet, and with this patent as a guide, the problem before a machine designer would be to develop an improvement in the adjusting means: "Ordinarily there is no invention in making parts of a machine adjustable." Amdur Patent Law & Practice, P. 148, Par. 57. The adjustable means used by the plaintiff was similar to Schaefer's and the coaxial feature was used solely to prevent play at the time of adjustment.

Coaxial, simply means on-center and is sometimes referred to as concentrical or symmetrical. The importance of the mechanical relationship is well known in the art and a feature that must be considered in all machine designing when you desire parts to move together harmoniously and free from friction. The same principle is used in the crank shaft of any automobile. It is a mechanical principle that is hundreds of years old. Both the experts of the plaintiff and the defendant agree in this respect. The plaintiff's expert, Leslie K. Loehr, testified as follows:

"Q. Whenever you have two members that you want to turn together in the same orbit or to maintain contact with each other as they are turning together, you know that they should be on-center, isn't that correct? A. Well, they may be coacting in such a way that the resultant would be a center.

"Q. The resultant; either they are actually on-center or the resultant amounts to the same thing; isn't that correct? A. Yes; so they will function together.

"Q. In other words, this matter of putting these members on-center is one of the common tools and one of the common

experiences of a machine designer? A. Yes. If you have reference to machine elements in a machine; yes."

 It is common knowledge that the front wheels of an automobile must both rotate on a common axis, or in other words must be coaxial. This relationship is demonstrated in the Cunningham patent (No. 1,930,192, issued October 10, 1933).

 The plaintiff lays stress on the fact that the rocker has recesses in it. The evidence discloses that the mechanical department of the Crosley Corporation was instructed to design a push button type tuner. And when it decided to use the tappet and rocker method, it seems to me that it would have been very difficult to use a push button or plunger that would not have to pass through the rocker, when the rocker and tappet were brought into full engagement. It was the natural thing to do and in so doing the parts became coaxial. I believe the coaxial feature was the result of the use of mechanical skill and that the patent in suit is not the result of the application of inventive genius. Wilson-Western Sporting Goods Co. v. Barnhart, 9 Cir., 81 F.2d 108, Bailey v. Sears, Roebuck & Co., 9 Cir., 115 F.2d 904. In my opinion this case comes clearly within the rule laid down in Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 231, 27 L.Ed. 438, wherein it was said:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head-workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences.

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures."

Risdon Iron & Locomotive Works v. Medart, 158 U.S. 68, 15 S.Ct. 745, 39 L. Ed. 899; Scott & Williams, Inc., v. Hemphill Mfg. Co., D.C., 247 F. 540; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980; United States Hoffman Machinery Corp. v. Cummings-Landeau Machinery Co., 2 Cir., 113 F.2d 424.

 I therefore hold claims 7, 8, 9, 10 and 11 of the reissue patent invalid; consequently, it becomes unnecessary to consider the other defenses raised by the defendant. Defendant will prepare findings in conformity with this opinion.