### RICHARDS & CONOVER CO. v. LEISHMAN.

#### No. 3577.

United States Court of Appeals Tenth Circuit.

Nov. 15, 1948.

Rehearing Granted Jan. 5, 1949.

On Rehearing Jan. 20, 1949.

Writ of Certiorari Denied April 18, 1949. See 69 S.Ct. 882.

Foorman L. Mueller, of Chicago, Ill. (Josiah G. Holland, of Denver, Colo., on the brief), for appellant.

John Flam, of Los Angeles, Cal. (J. B. Dudley, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

Leishman brought this action against The Richards and Conover Company for alleged infringement of claims 7 to 11, inclusive,[1] of Reissue Patent No. 20827.

---

[1] The claims in suit read:

"7. In combination with the tuning mechanism of a radio apparatus, of a rotatable rocker mounted upon a shaft operatively connected with said mechanism, said rocker having two arms each extending on a different side of said shaft; means adjustable movable about a pivot and acting upon bodily movement in one direction to slidably engage either arm of said rocker and push it in one direction to an angular position at which

From a decree holding the claims in suit valid and infringed, The Richards and Conover Company has appealed.

The original patent was applied for December 15, 1934, and granted February 15, 1938. The reissue patent was applied for May 23, 1938, and granted August 16, 1938.

The original patent contained six claims. The reissue patent contained the claims of the original patent and additional claims 7 to 12, inclusive.

The patent is for an apparatus for turning rotatable rockers about their axes to predetermined positions.

the movement of said rocker is arrested by the collision of said means and the oppositely moving other arm of said rocker; and a spring for holding said means in a normally inoperative position; said rocker constructed so as to admit at least a portion of said means between said arms.

"8. The combination with the tuning mechanism of a radio apparatus, of a rotatable rocker mounted upon a shaft operatively connected with said mechanism, said rocker having two arms each extending on a different side of said shaft; means adjustably movable about a pivot and acting upon bodily movement in one direction to slidably engage either arm of said rocker and push it in one direction to an angular position at which the movement of said rocker is arrested by the collision of said means and the oppositely moving other arm of said rocker; and a spring for holding said means in a normally inoperative position; the axis of said means being substantially co-axial with the axis of said rocker when said means is in engagement with both of said arms.

"9. In a mechanism for angularly positioning a control of a radio device, a combination including: a rotatable rocker comprising two shoulders lying on opposite sides of the axis of said rocker; and a manually movable operating means comprising an adjustably mounted positioning element adapted upon movement of said means in one direction to engage one shoulder of said rocker and rotate said rocker to a position at which the movement of said element is arrested by the collision of said element and the oppositely moving other shoulder of said rocker; said rocker constructed to permit at least a portion of said means to pass beyond a line connecting the points on said shoulders at which the shoulders are contacted by said means.

"10. In a mechanism for angularly positioning a control of a radio device, a combination including: a rotatable rocker comprising two shoulders lying on opposite sides of the axis of said rocker; a manually movable operating member; and a positioning element adjustably mounted on a pivot carried by said member; said element adapted upon movement of said member in one direction to engage one shoulder of said rocker and rotate said rocker to a position at which the movement of said rocker is arrested by the collision of said element and the oppositely moving other shoulder of said rocker; the axis of said element and the axis of said rocker being substantially coaxial when said element is in engagement with both of said shoulders.

"11. In a mechanism for angularly positioning a control of a radio device, a combination including: a rotatable rocker comprising two arms lying on opposite sides of the axis of said rocker; a manually movable operating member; a positioning element adjustably mounted on a pivot carried by said member; said element adapted upon movement of said member in one direction to engage one arm of said rocker and rotate said rocker to a position at which the movement of said rocker is arrested by the collision of said element and the oppositely moving other arm of said rocker; said rocker having a recess between said arms so that the axis of said element and the axis of said rocker may be substantially coaxial when said element is in engagement with both of said arms; and means operable from the external end of said member for holding said element in adjusted position."

On January 12, 1939, Leishman disclaimed claim 5 of the reissue patent.

On November 10, 1939, Leishman filed a qualified disclaimer reading as follows:

"Hereby disclaims from the scope of claim 8 of said Letters Patent all structure except that in which the rocker is so constructed that it may act as a common follower for a plurality of such recited movable means; and

"Disclaims from the scope of claim 9 of said Letters Patent all structure except that in which the positioning element is so adjustably mounted that it may be fixed and maintained in its adjusted position irrespective of repeated operations of said operating means; and

"Disclaims from the scope of claim 10 of said Letters Patent all structure except that in which the positioning element is so adjustably mounted that it may be fixed and maintained in its adjusted position irrespective of repeated operations of said operating member."

The device of the patent is illustrated by Figures 1 and 2 of the patent drawing.

pivoted on a shaft. When the lever is depressed, one side of each tappet engages an

Fig.1

Fig. 2

It will be noted that Figure 1 illustrates two rockers, 48 and 54. Claims 1 to 4, inclusive, 6 and 12 cover a device with two or more rotatable rockers. However, the claims in suit are limited to one rotatable rocker.

One purpose of the patented device is to provide an apparatus for simultaneously turning one variable condenser to bring in a radio broadcast and a second variable condenser to bring in a television broadcast. Such a device embraces a pair of rotatable rockers, one connected with the radio and the other with the television condenser shaft. Each rocker is movable by a corresponding tappet frictionally clamped in a predetermined position on a lever assembly. Each tappet is mounted on a pivot so that it can be adjusted to different angular positions. One end of the lever assembly is

arm of its corresponding rocker and rotates that rocker until both arms of that rocker are in full engagement with both sides of its corresponding tappet, thus bringing each rocker to a position of rest. It will be observed that the position to which the tappet is adjusted determines the point at which the rocker comes to rest and the wave length to which the condenser is tuned, and that by one movement of the lever, each condenser is brought into a predetermined position. Adjustment is effected by loosening a setscrew mounted on the lever, depressing the lever, manually moving the condenser and its corresponding rocker to a desired predetermined position, moving the tappet into an angular position so that each of its sides is in complete engagement with its corresponding rocker arm, and then tightening the setscrew so as to hold the tappet in such angular position.

There is a recess in each rocker between the two opposite arms thereof. Each tappet has a projecting portion through which its pivot extends. When the lever is depressed, that portion of the tappet through which its pivot extends moves into the recess in the rocker, and the axis of the tappet and the axis of the rocker become coaxial. This coaxial relationship is important because it insures accuracy at the time of the adjustment of the tappet. When each side of the tappet is brought into engagement with its corresponding arm of the rocker, the latter having been set at a predetermined and desired position, with coaxiality between the axis of the tappet and the axis of the rocker, pressure on the lever to hold the tappet in engagement with the rocker while the setscrew is being tightened will not result in movement of the rocker. Absent such coaxiality, pressure on the lever bringing the tappet into full engagement with the rocker, when the latter is in certain angular positions, would have a tendency to move the rocker.

The alleged infringing device employs a metal bar in the form of a plunger to which an adjustable tappet is attached. The plunger moves in guides. It carries a setscrew by which the tappet can be loosened for adjustment and held rigid at a desired angular position. As the plunger moves forward, one side of the tappet engages the rocker and rotates it until each side of the tappet is in engagement with its corresponding rocker arm. There is a recess in each rocker between the two opposite arms thereof. Each tappet has a projecting portion through which its pivot extends. When the plunger is pushed forward, the pivot of the tappet moves into the recess in the rocker and when each side of the tappet is completely engaged with its corresponding rocker arm, the axis of the tappet is substantially coaxial with the axis of the rocker. Movement of the shaft of the rocker is communicated by spur gears to the shaft upon which the movable condenser plates are mounted. By moving the plunger forward, the tappets engage and move the rotatable rocker shaft which, in turn, by means of the spur gears, turns the condenser shaft and thus adjusts the condenser to the wave length of a desired station.

In Leishman v. Associated Wholesale Electric Co., D.C., 36 F.Supp. 804, the court adjudged claims 7 to 11, inclusive, invalid for want of invention. On appeal, the Ninth Circuit held that if claims 7 to 11, inclusive, did not include levers, they were not for the same invention as the original patent and were, therefore, invalid, and that if they did not include levers, the plungers and the levers not being mechanical equivalents, such claims were not infringed by an accused device which contained no lever, and concluded it was not necessary to pass on the validity of claims 7 to 11, inclusive.[2]

There, as here, the alleged infringing device employs only one rocker and one set of corresponding tappets, and the tappets are mounted on and moved by plungers, not levers.

However, claims 7 to 11, inclusive, embrace a single rocker and corresponding adjustable tappets mounted on pivots, means for moving each tappet so one of its sides engages one arm of the rocker and rotates the rocker until the other side of the tappet engages the other arm of the rocker, and they do not specifically embrace a lever

[2] See Leishman v. Associated Wholesale Electric Co., 9 Cir., 137 F.2d 722, 727, where the court said:

"These claims, it will be observed, are for combinations each of which includes a rocker. Whether the combinations include tappets and levers is not clear. If they do not include levers, the claims are not for the same invention as the original patent and hence are invalid. If they do include levers, the claims are not infringed, for the accused device contains no lever.

"The accused device (a mechanical tuner for a radio receiving set) is manufactured by the Crosley Radio Corporation and sold by appellee. It has a rocker which is the equivalent of appellant's rocker 48. It has no rocker 54 nor any equivalent thereof. It has tappets each of which is the equivalent of appellant's tappet 61. It has no tappet 62 nor any equivalent thereof. It has no lever of any kind or character. Its tappets are operated (made to engage the rocker) by means of plungers. The plungers perform a part, and only a part, of the function performed by appellant's levers F and 66. The part so performed is not performed in the same way, or in substantially the same way. Hence the plungers and the levers are not equivalents."

means for carrying and moving the tappets; and we are unwilling to rest our decision on the narrow ground that the lever in the device of the patent in suit and the plunger in the accused device are not mechanical equivalents.[3]

The use of levers and adjustable tappets mounted thereon to rotate rockers was well known in the art when Leishman entered the field. The prior patent to Marschalk, No. 2,072,897, granted March 9, 1937, discloses a lever assembly, an adjustable tappet pivotally mounted thereon, and a rocker, the shaft of which communicates by spur gears with a shaft on which movable radio condensers are mounted, so arranged that by depressing the lever, the rocker will be rotated by the tappet to a predetermined position to which the tappet has been adjusted, and the rotation of the rocker will, in turn, rotate the condenser shaft so as to tune the radio to a desired wave length. Marschalk, however, does not disclose the element of coaxiality of the axis of the tappet and the axis of the rocker embraced in claims 8, 10, and 11. It is clear, therefore, that claims 7 and 9 are anticipated by Marschalk and that claims 8, 10, and 11 are likewise anticipated by Marschalk, unless the adding to the combination disclosed by Marschalk of the element of coaxiality amounted to invention over Marschalk. The principle of coaxial relationship and its importance, where it is desired that two parts of a machine operate together harmoniously, has been within the knowledge, for many years, of ordinary mechanics skilled in their art.

In order to rise to the dignity of invention, the conception of a patent must be the result of the exercise of the inventive or creative faculty, not of mere mechanical skill.[4]

Mechanical skill is but the display of the expected skill of the calling; it involves only the exercise of the ordinary faculties of reasoning, aided by the special knowledge and the facility of manipulation which is acquired through habitual and intelligent practice of the art and it is in no sense the creative work of that inventive faculty which it is the purpose of the Constitution and the patent laws to encourage and reward.[5]

That which would readily appear to one acquainted with the prior art and skilled in that art involves merely mechanical skill.[6]

Here, we think, the desirability of having the axis of the tappet and the axis of the rocker coaxial, when the tappet is in full engagement with the arms of the rocker, and the necessary changes in Marschalk's device to effect that result, would readily occur to one acquainted with the prior art and skilled in that art and would involve the exercise of mere mechanical skill.

We conclude, therefore, that claims 8, 10, and 11 did not constitute invention over Marschalk and that all of the claims in suit were anticipated by Marschalk.

The judgment is reversed and the cause remanded with instructions to enter a decree adjudging the claims in suit invalid for want of invention.

### On Rehearing.

In our former opinion, we recognized the importance of coaxiality between the axis of the rocker shafts and the axis of the pin on which the tappet is mounted on the lever or plunger. We said:

"This coaxial relationship is important because it insures accuracy at the time of the adjustment of the tappet. When each side of the tappet is brought into engagement with its corresponding arm of the rocker, the latter having been set at a predetermined and desired position, with coaxiality between the axis of the tappet and the axis of the rocker, pressure on the lever to hold the tappet in engagement with the rocker while the setscrew is being tightened [to hold the tappet in a desired position]

[3] Cf. Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999, 1012. See Walker on Patents, Deller's Ed., Vol. 3, p. 1706, § 468.

[4] Callison v. Boyle, 10 Cir., 95 F.2d 575, 576; Turner v. Goldstein, 10 Cir., 154 F.2d 338, 341.

[5] Callison v. Dean, 10 Cir., 70 F.2d 55, 58; Hollister v. Benedict & Burnham Mfg. Co., 113 U.S. 59, 73, 5 S.Ct. 717, 28 L.Ed. 901.

[6] Callison v. Dean, 10 Cir., 70 F.2d 55, 58; Callison v. Boyle, 10 Cir., 995 F.2d 575, 576; Turner v. Goldstein, 10 Cir., 154 F.2d 338, 341.

will not result in movement of the rocker. Absent such coaxiality, pressure on the lever bringing the tappet into full engagement with the rocker, when the latter is in certain angular positions, would have a tendency to move the rocker."

Such movement of the rocker is called creeping.

We held, however, that the ascertainment of the cause of creeping in the Marschalk device and the making of the changes in that device necessary to overcome creeping would involve the exercise of mere mechanical skill and would not amount to invention.

On rehearing, counsel for Leishman urged that the cause of creeping in Marschalk's device is obscure; and that neither such cause nor the solution of the problem would readily occur to a mechanic skilled in the art.

Our views with respect to such contention may be more readily expressed by reference to the following drawings:

FIG.- 1

FIG.- 2

I is a view of one end of the rocker; D is the shaft at one end of the rocker, which is carried by a journal in the frame; H is the lever, one end of which is pivotally attached to the frame at F. An arm extends downward from the lever and the tappet J is pivoted on that arm by a pin A. X to Y is a vertical line drawn through the axis of the rocker shafts; E and C are the opposite edges of the upper face of the rocker, which edges run parallel to each other and to the axis of the rocker shafts.

With little experimentation, the following facts would be obvious to a mechanic, skilled in the art, seeking the cause of creeping in Marschalk's device and the solution of the problem thereby presented.

When the predetermined and desired position of the rocker is such that the upper face of the rocker is substantially at right angles with the vertical line XY, as in figure 2, downward pressure on the lever H sufficient to hold the tappet in full engagement with the rocker will not cause creeping. Indeed, when the rocker is in that position, very heavy downward pressure on the lever will not cause perceptible creeping. When the rocker is positioned, as in figure 2, and the tappet is in full engagement with the rocker, the pin A and the shafts of the rocker are more nearly coaxial than they are in any other possible position on the rocker. However, even when the rocker is positioned as in figure 2 and the tappet is in full engagement therewith, pin A is slightly to the right of the vertical line XY and the axis of such pin is slightly above the axis of the rocker shafts.

Creeping does not result from ordinary pressure exerted on the lever, amply sufficient to hold the tappet in full engagement with the rocker, unless the rocker is substantially tilted, that is, positioned so that one side is substantially above the other as in figure 1.

When the rocker and the tappet are positioned as in figure 1, pin A is a greater distance above the axis of the rocker shafts and a greater distance to the right of the vertical line XY than when the rocker and tappet are positioned as in figure 2. In other words, the more the rocker is tilted, the greater becomes the non-coaxiality between the axis of the rocker shafts and pin A. And when the rocker and tappet are positioned as in figure 1, the vertex G of the tappet, instead of being approximately at the line XY, as in figure 2, is to the left of such line, and the right-hand base of the tappet extends beyond the edge C and the left end of the base of the tappet is at point B.

When the rocker and the tappet are positioned as in figure 1, the distance from pin A to point B on the upper face of the rocker is greater than the distance from pin A to the point on edge C of the upper face of the rocker where the base of the tappet intersects such edge, referred to hereinafter as point O. And the distance from the axis of the rocker shafts to the point on edge C of the upper face of the rocker where the base of the tappet intersects such edge, referred to hereinafter as point P, is greater than the distance from such axis to point B. Hence, the lever from point P to the axis of the rocker shafts is longer than the lever from point B to such axis, and the lever from point B to pin A is longer than the lever from point O to pin A. As a result, when force is exerted by downward pressure of the lever H through the tappet upon the upper face of the rocker, the downward force at point O has the advantage of greater leverage than the downward force at point B, and the resisting force of the rocker at point B has the advantage of greater leverage than the resisting force of the rocker at point O. Consequently, when the tappet and the rocker are positioned as in figure 1, and lever H is pressed downward, edge E will move upward and edge C will move downward until the corresponding leverages are approximately equal as in figure 2.

Since the more the rocker is tilted the greater becomes the non-coaxiality between the axis of the rocker shafts and pin A and the greater becomes the tendency of the rocker to creep, and since, when the pin A approaches substantial coaxiality with the rocker shafts, creeping disappears, it is obvious that the problem can be solved by effecting substantial coaxiality between

pin A and the axis of the rocker shafts, when the tappet is in full engagement with the rocker. When such coaxiality is effected, the distance between pin A and point O and between pin A and the point where the base of the tappet intersects edge E, will be equal, and the distance between point P and the axis of the rocker shafts, and between such axis and the point where the left-hand base of the tappet intersects edge E, will be equal, when the tappet is brought into full engagement with the rocker, regardless of the position of the rocker.

Such coaxiality can be effected by lengthening the arm on the lever H, extending an arm from the center of the base of the tappet, cutting a rectangular opening in the rocker sufficient to admit the arm on the lever H and the arm of the tappet, positioning the tappet in full engagement with the parallel arms of the rocker and then attaching the arm of the tappet pivotally to the arm of the lever H by pin A, at a point coaxial with the axis of the rocker shafts.

The solution of the problem would be less difficult in a device which employs a plunger to which the tappet is pivotally attached and which moves the tappet into engagement with the rocker because, in such types, there normally would be an opening in the rocker through which one end of the plunger would move and the pin which carries the tappet on the plunger would move in a straight line rather than in an arc as in the lever type.

Counsel for Leishman contend it is manifest that the cause of creeping is obscure because an expert witness for the defendant below testified that if the line of thrust from pin A is either to the left or the right of the axis of the rocker shafts, creeping will occur, and that Leishman's physical exhibits 26, 26A, 26B, and 26C demonstrate that if pin A is not coaxial with the rocker shafts, although the pin travels downward in a line of thrust which intersects the axis of the rocker shafts, creeping will still result.

It is obvious that when the expert so testified he was talking about a force from pin A traveling along a straight line. In Marschalk's device, pin A travels in an arc. But the fact that pin A moves in an arc to the right of vertical line XY is one cause of the creeping in Marschalk's device. The expert did not testify that it was the sole cause of creeping. Indeed, he testified that where the rocker is mounted on a rotatable shaft, rather than as in the prior patent to Schaefer No. 1906106,[1] substantial coaxiality between the axis shafts and pin A would be necessary to avoid creeping.

For the reasons indicated, we adhere to the views expressed in our former opinion that the inclusion of the element of coaxiality in claims 8, 10, and 11 of the patent in suit did not rise to the dignity of invention over Marschalk and other prior disclosures.

The judgment is reversed and the cause remanded with instructions to enter a decree adjudging the claims in suit invalid for want of invention.

---

[1] Schaefer, instead of using rockers, employed pairs of vertically disposed. reciprocal racks, which moved in guides by means of levers and tappets.