## LEISHMAN v. GENERAL MOTORS CORP.
### No. 12485.

United States Court of Appeals
Ninth Circuit.

Aug. 13, 1951.

Leroy J. Leishman, in pro per. (John Flam, Los Angeles, Cal., of counsel), for appellant.

Leonard S. Lyon, Leonard S. Lyon, Jr., Los Angeles, Cal., for appellee.

Before BIGGS,* HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

This is an appeal from a judgment holding claims 7 to 11 inclusive of appellant's reissue patent No. 20,827, to be invalid.

The appellee General Motors Corporation, as plaintiff, filed its complaint against defendant, appellant Leishman, seeking a declaratory judgment that such claims of appellant's patent were invalid and not infringed by the automatic radio tuning devices manufactured by the appellee. The defendant put in issue the allegations of the complaint and by counterclaim asserted that said claims of such patent were valid and infringed by appellee's tuners. He asked for an accounting and an injunction.

The trial court found that the claims of appellant's patent were invalid because of anticipation and lack of invention, and a judgment to that effect was accordingly entered.

* Chief Judge, Third Circuit, sitting by special designation.

The subject matter of the suit pertains to automatic tuning devices for radio receivers, devices by which a radio receiver may be tuned to particular stations by simply pressing a lever or pushing a button.

Appellant's patent has been fully described in the reports of other decisions of this and other courts which have dealt with the question of the validity or of the infringement of this same patent. In Leishman v. Associated Wholesale Electric Company, 1941, 36 F.Supp. 804, Judge Harrison, for the District Court of the Southern District of California, determined that the same claims of the same patent were invalid for lack of invention. Upon appeal to this court the judgment was affirmed, Leishman v. Associated Wholesale Electric Co., 9 Cir., 137 F.2d 722, upon the ground that the claims, if valid, were not infringed by the accused device. The court therefore found it unnecessary to pass upon the question of the validity of appellant's patent, and with respect to that expressed no opinion.[1]

The opinion in that case contains a reproduction of a drawing illustrating the appellant's patent. Subsequently, in Leishman v. Radio Condenser Co., 9 Cir., 167 F.2d 890, this court affirmed a summary judgment entered in the same district court holding the same patent not infringed, and reaffirmed its decision in the Associated case, supra. The same patent was again fully described in Richards & Conover Co. v. Leishman, 172 F.2d 365, in which the Court of Appeals for the 10th Circuit held the same claims of the patent invalid for want of invention. That opinion also contains reproduction of drawings illustrative of appellant's claims.

Since a reference to the reported decisions cited will disclose the nature of appellant's claims in great detail, we find it unnessary to repeat the descriptions there given.

In brief it may be said that the claimed invention relates to the problem of providing a simple and easy method of setting the buttons or keys of an automatic tuner so as to bring in, upon pushing any button or key, the desired broadcasting station selected from a broad band of frequencies. As explained by Judge Harrison in his opinion in the Associated case, supra, and by the Court of Appeals for the 10th Circuit in Richards & Conover, supra, some of the earlier devices for adjusting and setting such automatic tuners, for instance the one covered by prior patent to Marschalk, proved unsatisfactory because of difficulty of avoiding "creeping" during the process of adjusting the device so as to bring in the desired station. This problem of "creeping" is described at length in the opinion on rehearing of the Richards & Conover case, 172 F.2d at page 369.

Judge Harrison called the same problem one of "play". Referring to the coaxial relationship between the parts of appellant's structure, (which coaxial feature is the heart of the claimed invention), and which appellant adopted as a means of meeting the "creeping" problem, Judge Harrison said: "The coaxial relationship is only important as a means of insuring accuracy at the time of the adjustment of the tappet. It is of importance in that respect for the reason that when the rocker is turned to the proper position for the bringing in of the desired station, the loosened tappet when brought into engagement with the rocker, may be set in proper position by the adjustable means, free from any play. Any play would result in inaccuracies that would destroy the effectiveness of the device. The mechancial problem therefore was to ascertain a means for the accurate and simple adjustment of the tappet." [36 F.Supp. 808.]

In the tuner proposed by Marschalk, patent No. 2,072,897, use was made, as in the case of appellant's combination, of an adjustable tappet moved by a lever and designed to contact and position a rotatable rocker. The creeping difficulty mentioned occurred when the thumbscrew for adjusting the tappet was loosened and the tappet was moved down against the rocker whose position had been fixed by the hand setting of the tuner, the rocker being attached to

---

1. That decision of this court preceded Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644.

the revolving shaft used for that purpose. As the tappet was brought down upon the rocker thus positioned, the object was to permit the flat side of the loosened tappet to come against the rocker and assume the precise angle of the rocker. The thumbscrew would then be used to tighten the tappet into that position so that thereafter when the lever was pressed downward, the then rigid tappet would come against the rocker in whatever position it had then assumed, and by pressure, bring it back to the precise position in which it was when the setting occurred.

In actual operation it was found that the Marschalk device was very difficult to set accurately for the reason that when the loosened tappet was brought down upon the positioned rocker and some pressure applied to bring the two snugly together, the rocker had a tendency to "creep" or permit "play". This was particularly true when the rocker was in a position diagonal to the horizontal, and the creeping tendency was for the rocker to move toward a nearly horizontal position. The creeping tendency was very much less, or almost non-existent, if the adjusting operation was undertaken when the rocker was in such near-horizontal position. The creeping would destroy the possibility of efficient setting or adjusting for the reason that the radio receiver must be set precisely on the right point on the dial in order to obtain good results.

As has been indicated, appellant claims that he solved this problem of creeping by the device which is illustrated at page 724 of 137 F.2d and at page 367 of 172 F.2d. It will be noted that his rocker consists of a rectangular border only,—No. 48 in the illustration. (The additional rectangle,

rocker 54, shown in the illustration, represents an extra feature of his device designed for simultaneous tuning of a television set and the same is not material here.)

As shown by figure 2 in the illustration, the tappet, 61, which moves against the rocker 48, is attached to the lever, 66, by a leg, 68, and pivots upon a pin, 60. It will be noted that when the tappet is thus brought into contact with the rocker in the Leishman device, the tappet and rocker are substantially coaxial, that is to say, that they revolve about the same axis, and about the same center line. Because they are thus coaxial, appellant asserts, the difficulties of setting or adjusting the tappet to the position required, which were experienced in Marschalk, do not occur with the patented device here in question.

Appellant's claim of invention is based upon his application of this coaxial feature to a combination of lever, tappet and rocker.

The trial court held that every element, feature and mode of operation of the tuner of the patent in suit was anticipated by the prior art and in the light of the teachings of prior patents. It also held that the employment of the principle of coaxiality in the device covered by the patent in question, did not constitute invention. The finding of anticipation was predicated upon the court's findings as to the teachings of the Marschalk, the Schaefer and the Cunningham patents. In arriving at its conclusion of want of invention, the court relied heavily upon the decision of Judge Harrison in the Associated case, supra, and of the Court of Appeals of the 10th Circuit in the Richards & Conover case, supra.[2]

2. Speaking of the teachings of the Marschalk and of the Schaefer patent, the trial Judge, in his opinion, said: "Moreover, we think independently that under the record before us and in the light of the teachings of the Marschalk Patent No. 2,072,897, and the Schaefer Patent No. 1,906,106, every element, feature and mode of operation of the Leishman combination in suit is anticipated. Even the heavily relied upon characteristic of a coaxial combination in the reissue patent, if indeed such arrangement involves an inventive concept, as distinguished from a common expedient of machine design, is found in Schaefer. It is no sufficient answer to the anticipating effect in this case of the Schaefer patent to assert that the Leishman reissue claims in suit are limited to coaxiality in connection with a rocker as distinguished from coaxiality in connection with the rack and pinion of the Schaefer or Zenith device. The function and mode of operation of the respective parts are identical and exclusively so." [85 F.Supp. 187, 190.]

Appellant asserts that the court's findings of anticipation are clearly in error. Thus, he says that the axes in the Schaefer device are far from being coaxial, and that the undisputed testimony shows that creeping was eliminated by Schaefer only by utilizing 18 additional parts, thus constructing a much more complicated mechanism. The Schaefer patent No. 1,906,106, utilized the principle of a rack and pinion instead of rocker, but it did utilize a lever upon which was mounted an adjustable tappet which moved against two arms or cross-bars whose relative position was fixed when the tuner was manually set at the desired station. The loosened tappet was then moved by the lever until both ends of the specially shaped tappet came in contact with the two cross-bars at which point it was ready for tightening, thus completing the setting process. To illustrate, Figure 4 of the Schaefer patent is here reproduced.

left hand racks are tied by top cross-bars not shown on the drawing. The rotatable member, 9, extends between both sets of racks, and both sets are provided with the same teeth and gears. The lever operates between the two sets of racks and the racks are held in position by guides above and below. In its formal findings the trial court said: "The coaxial characteristic of the patented tuner is anticipated by said Schaefer patent, whose function and mode of operation is identical with that of the patented tuner."

Appellant says that the two axes of the Schaefer tuner are 55, the axis of the tappet, and 9, the axis of the rotatable shaft. Appellee says, on the other hand, that the cross-bars or arms, 32 and 34, move symmetrically about a line or axis located not in any physical part but midway between the two arms 32 and 34 at a location horizontally aligned with the two

Fig. 4

Inventor:
Joseph M. Schaefer
By J Clarke Hagey Atty.

The rotatable member or shaft which sets the receiver is 9. As it is rotated, the racks 26 and 27, are moved up and down by the rack and pinion mechanism. The two cross-bars, 32 and 34, extend at right angles to the two racks to two other corresponding racks, and both right hand racks and both

arms when they are moved to a common level. Appellee says that the axis 55 of Schaefer's tappet coincides with this axis or line of symmetry, and that this coaxiality is incorporated in the Schaefer apparatus.

Appellant takes violent exception to this contention and claims that appellee's at-

tempt to import such a theoretical axis into the Schaefer device is "pure sophistry". He says the undisputed testimony was that Schaefer avoided creeping by the interposition of extra parts between his tappet and rotatable member; that these were 18 in number and that their number created a complication in the apparatus which makes it markedly distinct from appellant's device. He argues that it is apparent from this undisputed testimony and from the exhibits themselves that the principle of coaxiality performs no function in eliminating creeping in the Schaefer device. He complains that the argument thus made by appellee with respect to a line or point of symmetry and alleged coaxial relationship in Schaefer's tuner was not made during the trial when this "sophistry" could have been exposed by cross-examination, as it was when appellant tried the Richards & Conover case in the District Court in Oklahoma.

Relying upon a stipulation that a copy of the record on appeal in the Richards & Conover case might be considered as a part of the record in this case, appellant in an appendix to his reply brief cites the testimony of a Dr. Spotts, an expert witness in the Richards & Conover case, who testified regarding the Schaefer tuner: "Q. Is that coaxial? You can answer that yes or no. A. There is no axis for the body that has up and down motion. Q. Then your answer is yes or no? A. The answer is no."

The witness also testified that the round spot, No. 55, (the pivot of the Schaefer tappet), could be moved sidewise "without any effect in the operation" of the Schaefer tuner, and that this could be done so long as "you have lateral support for members 26 and 27 * * *. Providing that did nothing more than make points 57 and 58 retain contact with the horizontal surface." Appellant says that if these matters had been disclosed to the Judge below they would have exploded any idea that the Schaefer device anticipated appellant's feature of coaxiality.

It is true that appellant testified that the problem of creeping was solved in the Schaefer tuner by the addition of extra parts. He describes these parts in such way that they add up to 18, although this seems to us to be somewhat of an exaggeration. He counts the racks, 26 and 27, and the two opposite members, as being 4 parts; he counts the cross-bars above and below, as 4 more; he counts the gears as 2 more parts, and adds the two sets of 4 guides to make a total of 18. We think it is not material here but in our view, since the racks and cross-bars on each side make two rectangular frames, each shaped somewhat like a honeycomb frame, or a box without top or bottom, it would be more accurate to say that the extra parts were the two frames and the two gears, making a total of four.

While appellant contented himself with explaining the success of the Schaefer tuner as resulting from these extra parts, the record is completely lacking in any explanation as to why the extra parts accomplished that result. We think that it is manifest from the exhibits that the trial court could fairly conclude that the principle which prevents creeping in the Schaefer tuner is the principle of equilibrium, or balance, and that creeping does not occur for the simple reason that when the specially shaped tappet 56 is pressed firmly in position upon the arms or cross-bars 32 and 34, the pressure upon each arm is identical. It is true that the arms move up and down upon the racks instead of rotating, but basically the desired result is obtained because the tappet is so shaped and located that an imbalance is not possible.

Marschalk, who followed Schaefer, undertook to simplify the Schaefer device by the introduction of a rotatable rocker in the place of the arms or cross-bars, and, so far as the use of tappet, rotatable rocker and lever are concerned, preceded the appellant. What appellant has done in effect, (although there is no evidence of any conscious effort to that end), has been to tie together with cross-members the ends of the two lower arms or cross-bars of Schaefer, and to cut off the racks and pinions above the arms, and to insert rotatable shafts at the center of the new tie bars so that the arms or cross-bars on which

the tappet operates will now rotate instead of move up and down. Here, as in the Schaefer device, creeping is avoided because of the attained equilibrium, the pressure on either side being continuously the same, and this is obtained, of course, through the coaxiality resulting from the modifications just described. We think that the mechanical principle involved both in the Schaefer tuner and in appellant's tuner is essentially one of equilibrium and balance, and that it involves mechnical principles as old and as simple as those utilized in an ordinary two-horse evener on a farm wagon.

Appellant has devoted a considerable portion of his argument to a contention that the trial court placed far too much emphasis upon the decision in the Richards & Conover case, the opinion in which was handed down after the case had been tried in the court below. In that case, as in this, appellant claimed that the causes for the creeping or play in the process of setting the Marschalk tuner were obscure, and contended that in discovering how a combination of a rocker and tappet in coaxial relationship to each other would eliminate that defect, he had made a contribution to the art amounting to invention.

In its opinion upon rehearing, the Court of Appeals for the 10th Circuit made a diagram which it considered demonstrated that the reasons for the objectionable action in the Marschalk tuner were not obscure but fairly obvious. The court's diagram appears, 172 F.2d on page 370 of the opinion and was designed to disclose why the creeping or flipping of the rocker and tappet occurred more readily when the rocker was in a diagonal position than when the rocker was in a horizontal position. The two positions were illustrated by figures 1 and 2, which the court considered disclosed that when the tappet was brought down upon the rocker in a diagonal position, as shown in figure 1, the bearing or pressure would be more to the right of the line of the axis of the rocker than would be the case where the rocker was in a horizontal position as in figure 2.

In other words, that court apparently thought there was a greater lack of balance or equilibrium in figure 1 than in figure 2. The conclusion of the court appears to have been that because the difficulty in the Marschalk device so clearly resulted from a simple lack of balance, the appellant's device designed to overcome that was no more than a mechanical adaptation not rising to the dignity of invention.

Appellant says that since the opinion in the Richards & Conover case was handed down after the close of the evidence in the case at bar, he had no opportunity to prove, as he says he might have done, that the diagram and attempted demonstration in that opinion were inaccurate and mechanically unsound. He says that had he been permitted that opportunity, the trial court would not have placed so much reliance upon the decision in that case. After the findings in the court below, the appellant made a motion to amend the findings and judgment and a motion for a new trial supported by the affidavits of a professor of engineering at the California Institute of Technology, an expert in engineering research at the University of California at Los Angeles, a professor of mechanical engineering at the University of Southern California, and an instructor in physics and chemistry at a Los Angeles high school. These affidavits were to the effect that the court's diagrams were improperly drawn and the court's conclusions based on unsound assumptions of mechanical principles. It is urged that although it was within the discretion of the trial court to deny the motion, yet we ought to take judicial notice of the mechanical principles pointed out in those affidavits. For instance, it is pointed out that the two figures on that court's diagram are improperly drawn, for the point (A) in figure 1 is clearly farther from the base of the tappet than is the point (A) in figure 2. Thus the two figures do not fairly represent the same mechanical device.

We think it is not of particular importance here whether the court's diagram in the Richards & Conover case was, or was not, properly drawn. For whether the cause of the creeping in the Marschalk device was obscure, as appellant says, or whether it is explainable as indicated in

the diagram referred to, it seems clear to to us that the one thing that was lacking in Marschalk was the means of attaining equilibrium or symmetry which lack had been overcome in the Schaefer device by attaining equality of pressure on the two sets of racks, and was overcome by the appellant by creating equilibrium through a coaxial construction.

Appellant's exhibit E is a working model introduced in evidence for the purpose of illustrating how the Marschalk device operated. An examination of that exhibit is sufficient to disclose, we think, that the creeping in the Marschalk device was due to the lack of equilibrium or balance between the rocker and the tappet, since the point of pressure of the tappet through the pin on which it revolves is to one side of the axis of the rocker. When the rocker is at a diagonal position, the tappet comes in contact with the rocker when the lever has been pushed only part way down. At that position the lack of equilibrium or symmetry is great for it is added to by a factor resulting from the fact that the rocker has a thickness of nearly a quarter-inch. When the rocker is at a horizontal position, the lever must be brought farther down in order to make contact with the rocker, and when the rocker is in that position, the imbalance or lack of symmetry is substantially less than is the case when the contact is made with the rocker at a diagonal position. Even so, because there is still some lack of balance, the possibility of creeping continues even when the rocker is at the horizontal position, and if pressure is added with a slight backward and forward movement of the lever, the rocker will continue to turn until the lever has reached the point beyond which it cannot be moved without breaking the rocker.

This court, through an examination of exhibit E, and without regard to the accuracy, or otherwise, of the Richards & Conover diagram, has come to the conclusion that a mechanic skilled in the art, on examining the Marschalk device, would immediately observe that the solution of the problem would have to be obtained by procuring the required equilibrium and would note that the way to accomplish that would be through making the tappet and rocker coaxial.

The court's finding No. 9, that "the coaxial characteristic of the patented tuner is anticipated by said Schaefer patent, whose function and mode of operation is identical with that of the patented tuner", was no doubt prompted by a consideration of the physical and mechanical aspects of these two devices to which we have here called attention. We think it obvious that the court had in mind the principle of equilibrium or balance which, as we have pointed out, is disclosed both in the operation of the Schaefer tuner and in that of the patented tuner here at issue.

 In addition, the trial court had the exclusive opportunity of listening to the oral testimony which dealt with this principle. Thus it was testified by one of appellee's engineers that the engineering principle which lies behind the coaxiality here involved, was the principle of symmetry or concentricity, long known to machine designers as a means of avoiding moment arms.[3] The testimony thus given appears

3. He testified:
 "Q. What principle of engineering is utilized in establishing such coaxiality? A. The elimination of all moment arms, or making the center of rotation the same, means the center of travel, the arcuate travel is the same * * *.
 "Q. You have been asked about the operation or effectiveness of this feature of coaxiality in preventing two parts moving in connection with the device of the patent in suit and you have referred to the principle of moments or the elimination of moments. Will you explain just what you mean by that and what a mo-

ment is and how the elimination of moments avoids this walking that has been demonstrated here as being avoided by coaxiality? A. I will endeavor to do so. If the two centers are at a distance from each other the separating distance is considered the lever arm or a moment arm. When one point of one circle hits the point of its mating circle and the centers are not together—in other words, there is a moment arm difference between centers, then there will be a fight between the two circles as to each one wanting to follow its own path because of the leverage which exists between those two

to us to be reasonably credible and to mean that the principle which was applied by appellant is one designed to eliminate the moment arm through the establishment of symmetry, equilibrium or balance. We think therefore that this particular finding must be held to be the result of a determination of a question of fact, which cannot be said to be clearly erroneous, and that Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A., prohibits us from disturbing it. "To no type of case is this [requirement of Rule 52(a)] more appropriately applicable than to the one before us, where the evidence is largely the testimony of experts as to which a trial court may be enlightened by scientific demonstrations." Graver Tank & Air Products Mfg. Co. v. Linde Co., 336 U.S. 271, 274, 69 S.Ct. 535, 537, 93 L.Ed. 672. As well pointed out in Hazeltine Research v. Admiral Corp., 7 Cir., 183 F.2d 953, where as here, the decision turned upon questions of fact, an appellate court is not in a position to try such fact questions *de novo*. Maulsby v. Conzevoy, 9 Cir., 161 F.2d 165; Refrigeration Engineering v. York Corporation, 9 Cir., 168 F.2d 896.

Other findings of fact of the trial court relate to the Cunningham Patent No. 1,-930,192, which the court found anticipated the claims of the patent in suit. The Cunningham patent is a device for determining the amount of carbon dioxide in fluid gas so that its automatic determination will record or control combustion in a furnace. A part of the patented device includes an apparatus for automatic shaft setting. Figure 9 of the patent discloses this and includes a lever adjustably mounting a tappet which is moveable by the lever in contact with the rocker attached to the shaft to be positioned. When the tappet and rocker are in contact, the axis of the rocker is coaxial with the axis of the tappet, just as in the case of appellant's device.

Appellant asserts that the trial court is in error in respect to its findings relating to the Cunningham patent for the reason that it relates to a different, non-analogous art, with completely different problems.

Appellant's argument in this respect was given careful consideration by the court below which made three findings with respect to this patent.[4] It is to be noted that

---

points. I don't know whether that makes it entirely clear. Let me see if I can elucidate. For example, if we were striking right through the center of a circle with an arm and hitting the exact center of that circle the circle would not be expected to turn because there would be no moment arm, but if we were striking with an arm any point out from that center we have a moment arm by the distance out from that center and the circle would then move such as a crank and the crank would be the moment arm * * *.

"Q. What does this engineering practice of eliminating moments, that technique, have to do with the fact that in this tuner having an adjustable tappet and rocker with coaxiality there is no walking movement of the operating member as demonstrated to the court here? A. This application of the old principle of moment arms and how they work and how they function would be in this case to prevent the tappet from jumping around, or, in other words, from moving when it came into relation with the rocker; and that, as I have tried to point out, is application of an old principle to produce a desired result, because without

a moment arm the two pieces would either not move, or if actuated would move together * * *.

"Q. To make the record clear, is it your testimony that this technique of eliminating moments in designing machines or pieces of apparatus is what you referred to as principles of symmetry or concentricity, which you stated were known and expected of machine designs, to your knowledge, ever since you have been in school? A. That is what I meant when I testified to the symmetry, concentricity and coaxiality, and the laws of it for relative movement or non-movement."

4. "13. A model constructed accurately in accordance with Cunningham, Patent No. 1,930,192, was introduced in evidence at the trial, which can and does perform and function to turn an attached condenser to bring in any radio station the same as the patent in suit and which will attain the result of coaxiality in so doing in practically the same way as the patent in suit.

"14. The Cunningham patent is in the same art of automatic shaft positioning devices as is the patent in suit.

the court found that the Cunningham patent and the patent in suit are in the same art of automatic shaft positioning devices. Observed, also, is that the title of appellant's patent is not limited to radio tuners. It is entitled "Means and Method of Turning Rotatable Objects to Predetermined Positions", and his patent recites that it " * * * relates to improvements in automatic apparatus for turning rotatable objects about their axis to predetermined positions. * * *"

Finding No. 13, quoted in the last footnote, refers to the testimony of one of appellee's witnesses respecting a model constructed in accordance with the Cunningham patent and which was introduced in evidence at the trial. For illustrative purposes, the witness had connected this model from the Cunningham patent to a radio tuning condenser. The witness testified that so connected, the model from the Cunningham patent operated to bring in any radio station in the same manner in which appellant's device would do. As stated in the court's opinion, this witness: " * * * demonstrated that the model embodying the Cunningham apparatus exemplified coaxiality substantially identical as in the Leishman Combination and also in accordance with a written test written by defendant and published and circulated to the radio industry by him as descriptive of what he claimed to be protected by his patent."

■ We think that for the reasons we have mentioned in the discussion of the findings on the Schaefer patent, we cannot hold the court's findings with respect to anticipation by the Cunningham patent to be clearly erroneous. We think that the record amply justifies a finding that the new use of the coaxial principle by the appellant in a shaft positioning device is so nearly analogous to the Cunningham patent that the applicability of the device to its new use would occur to a person of ordinary mechanical skill. Cf. C. & A. Potts & Co.

v. Creager, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275; Ranco, Inc., v. Gwynn, 6 Cir., 128 F.2d 437, 443; Bingham Pump Co. v. Edwards, 9 Cir., 118 F.2d 338, 340, certiorari denied 314 U.S. 656, 62 S.Ct. 107, 86 L.Ed. 525.

■ The findings as to anticipation of the patent here in suit sufficiently established that appellant's device lacked the requisite novelty and required the judgment of invalidity.

■ Even if the disclosures of the prior art had fallen short of complete anticipation, yet invention may be negatived by such disclosures. Triumph Explosives v. Kilgore Mfg. Co., 4 Cir., 128 F.2d 444, 447, certiorari denied, Faber v. Triumph Explosives, 317 U.S. 660, 63 S.Ct. 59, 87 L.Ed. 530. We think that the record sufficiently sustains the view of the trial court that even if appellant's combination had disclosed something new, it would still fall short of invention. We must presume that Leishman knew that Schaefer created a workable device for setting an automatic tuner by providing balance or equilibrium of pressure upon the two opposite members against which his tappet was required to be adjusted. When a rotatable rocker was substituted for the rising arms or bars in the Schaefer, as Marschalk had done, it should be apparent to any mechanic skilled in such matters that the only practical means of securing equilibrium in the pressures upon the rocker was by making the point where the pressure was applied to the tappet coaxial with the rocker, which was but the application of an ancient principle of coaxiality to the problem of obtaining balance.

The test for determining whether in a case of this kind the subject matter displays " 'more ingenuity * * * than the work of a mechanic skilled in the art' * * * is often difficult to apply". Sinclair & Carroll Co. v. Interchemical Corp., supra.[5] Yet we think the record amply

"15. The Cunningham patent clearly anticipates claims 7, 8, 9, 10 and 11 of the patent in suit, with the result of establishing lack of invention in such claims over the prior art."

5. Commenting upon the difficulty of determining this question, Judge Harrison said: "In discussing this feature of the litigation I am appreciative of the fact that there is no method by which a court

supports the court's determination that what appellant did was a "mere exercise of the skill of the calling". Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 39, 86 L.Ed. 58.

Appellant presses upon us the applicability of the test of invention applied by this court in Pointer v. Six Wheel Corporation, 9 Cir., 177 F.2d 153. The four elements there enumerated for special consideration were: 1, the length of time the art, though needing the invention, went without it; 2, the number of those who sought to meet the need, and the period over which their efforts were spread; 3, how many, if any, came upon it at about the same time, whether before or after; 4, and, perhaps most important of all, the extent to which it superseded what had gone before.

The most outstanding respect in which appellant's claimed invention falls short of meeting these tests is in respect to the fourth item, for the evidence fails to show that it superseded any prior devices or met

with any commercial success. No lever operated tuner with appellant's tappet rocker system, either with or without the additional provision for television tuning, was ever built commercially.[6] The only tuners manufactured under license from appellant were leverless push-button tuners of the type held not to be covered by the patent in suit in Leishman v. Associated Wholesale Electric Co., supra.

Appellant, however, claims great commercial success for his combination, in that he asserts that the various automatic tuners accused by him of infringement in Leishman v. Associated Wholesale Electric Company, supra, Leishman v. Radio Condenser Co., supra, and Richards & Conover Co. v. Leishman, supra, and in the case at bar, all utilized appellant's coaxial principle, and were successfully sold in large quantities. From this he concludes that "seldom in the history of the patent system has there been such immediate and widespread adoption of a new invention." The court found that this contention with respect to such other tuners, all of which

can determine the exact point at which mechanical skill rises to the dignity of inventive genius. It is dependent upon the judgment of the court before whom the case is being heard, and as a case passes through different courts on its route to finality, different minds react differently upon the same set of facts." [36 F.Supp. 806.] Cf. the language of Judge Learned Hand in Kirsch Mfg. Co. v. Gould Mersereau Co., 2 Cir., 6 F.2d 793, 794: "There comes a point when the question must be resolved by a subjective opinion as to what seems an easy step and what does not. We must try to correct our standard by such objective references as we can, but in the end the judgment will appear, and no doubt be, to a large extent personal, and in that sense arbitrary."

6. The testimony of the appellant was: "Q. Mr. Leishman, has any commercial device ever been built in accordance with the drawings of your reissue patent here in suit No. 2,827? And by that I include with the double rocker 48 and 54. A. No.

"Q. Has any commercial device ever been built in accordance with the drawings of your reissue patent 20,827? And by that I include that the tappet member is carried by a lever pivoted at a point

corresponding to the point Q shown in Figure 2 of your patent drawings. A. No.

"Q. The only royalties that you have ever received from any licensees under the patent in suit based on any devices that you contend were manufactured under the patent in suit were from the Crowe Name-Plate—and what other company? A. They operated in connection with Quality Hardware and Manufacturing Company, but my royalties came through Crowe Name-Plate and Manufacturing Company.

"Q. From that company only? A. That is correct.

"Q. One Licensee? A. That is correct.

"Q. How long has it been since you received any royalties from them? A. I received no royalties on turners actually manufactured since the Radio Condenser and General Instrument and General Motors turners came into general use.

"Q. Can you just tell us what the date was, instead of the circumstances? A. I think I received no royalties since 1940.

"Q. And the devices on which you did receive royalties from that licensee were all of the type in which the tappet was mounted on a plunger which was not pivoted, is that correct? A. That is correct."

were of the push-button type, was without foundation in fact.[7] We find no reason to disturb such finding.

For the reasons stated in the concurring opinion in Cuno Engineering Corp. v. Automatic Devices Corp., supra, 314 U.S. at page 92, 62 S.Ct. 37, this is not a case in which a substantial commercial success can be found to have a bearing on the question of invention. In any event, such "considerations are relevant only in a close case where all other proof leaves the question of invention in doubt." Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 651, 89 L.Ed. 973. We think this is not such a case.

Since the findings which we here hold are sustained are such as to necessitate the judgment appealed from, it is unnecessary to consider other contentions of the parties.

The judgment is affirmed.

7. Findings 11 and 12 were as follows: "11. The widespread acceptance of push-button tuners in the radio industry is not attributable to the disclosures of the patent in suit * * * 12. Such widespread acceptance of push-button tuners in the radio industry is probably due to independent research and experimentation in the engineering department of the Crosley Corporation, an Ohio corporation which, prior to plaintiff, manufactured push-button turners in the radio industry."

In discussing this matter the court said: "Stress has been argued upon the widespread acceptance of automatic tuning devices in the radio industry as a reason for validating the question claims of the patent in suit. The evidence, however, upon this phase of the case does not warrant the court in attributing such success to the disclosures of the Leishman patent. Rather are such consequences, under the record before us, probably due to independent research and experimentation in the engineering department of the Crosley Corporation. At least such was the finding of Judge Harrison in the Associated Wholesale Electric Co. case made upon the secure ground of evaluating the evidence upon this issue with the yardstick of oral testimony from the witness stand. We have not had the same opportunity in the case at bar. Under the record here, however, we can find no sufficient reason to hold differently." [85 F.Supp. 191.]